McDONALD & BLACKBURN *v.* THE BEAR RIVER AND AUBURN WATER AND MINING COMPANY.

New trial not granted on affidavit of the Attorney of record, that he as well as his client and witnesses were absent on the trial of the case, because of a verbal agreement by opposing counsel to give notice of day of trial, when such affidavit is met by counter affidavits by the opposing counsel, and when an Attorney did appear and contest the case on the trial.

In an action of damages for diverting the water of a river from plaintiffs' mill, an averment in the complaint of possession of the land and mill, is sufficient against a trespasser, without averring riparian ownership or prior appropriation of the water.

Where no words appear in the body of an instrument expressive of the intent to make it a sealed instrument, it will not be such, even though the characters [L. S.] are added to the signature.

A general objection will not exclude a paper offered in evidence, unless on its face inadmissible or void.

Though an instrument be inadmissible as evidence of title, because on its face it is doubtful whether it be the deed of the agent executing it or of the principal, still it may be admissible to show the date of plaintiffs' possession; and if the agent was in the actual occupancy of the land, the paper would be good to show a surrender by him to plaintiff.

*Arguendo:* Right to water acquired by appropriation may be transferred like other property.

*Arguendo:* If by the erection of a mill and the possessory right of land on a stream, the water be acquired, a transfer of the possession of the property to a vendee, as owner, passes the water right.

*Arguendo:* An appropriation of water for mill purposes, stands on the same footing as an appropriation for the use of miners.

McDonald & Blackburn *v.* Bear River and Auburn Water and Mining Company.

Where a power of Attorney, not under seal, authorizes the agent to sell a saw-mill, dwelling, etc. by the execution of all needful instruments, sealed or otherwise, and the agent sells the right of the principal, by a paper not under seal, representing himself as the Attorney of the principal, and the vendee takes possession, and retains it for several years, he has an equitable estate in the premises, with the right to its full enjoyment, and this right, united to possession, enables him to maintain an action for interruption to his possession or injury to the property.

The rule requiring an instrument to be executed or signed in the name of the principal, does not apply to instruments not under seal.

If the name of the principal and the intention to bind him, appear in an instrument not under seal, the agent having authority, the principal alone will be bound, though the instrument be signed in the agent's name only.

A power of Attorney to sell "my saw-mill, dwelling, etc. said mill and *other improvements* being situated," etc. embraces the water privilege of the mill.

*Arguendo:* Where a party takes up a mill seat on public agricultural land, erects a saw-mill, dwelling, etc. and appropriates the water of the stream for the use of the mill, he may use the water for a grist-mill erected at the same place years afterwards.

It would require clear proof that the purposes of the water for the saw-mill had been fully answered, to hold that the title to the water was abandoned.

This question cannot be raised for the first time on appeal.

V. erects a mill and acquires a water right in 1850. In 1851 defendants appropriate for ditch purposes, water from the same stream, forty miles above the mill. In 1854 plaintiffs, M. & B. succeed to the possession of V. *Held:* that plaintiffs may, possibly, recover damages for the diversion of the water, on their possession, without connecting themselves with the title of V. back to 1850; that defendants' appropriation in 1851 could only be of the water not appropriated by V. there being no abandonment by him, and that M. & B. can jointly maintain an action for damages accruing after they came into possession.

At all events, the objection that M. & B. have no common interest in the mill, etc. but claim title from V. under different rights, should have been taken by motion for nonsuit or upon instructions, the want of common interest appearing from plaintiffs' evidence.

The question of the Statute of Limitations cannot be raised on appeal, unless presented in some form on the trial below, even though it be pleaded.

APPEAL from the Tenth District.

Action of damages for the diversion of the water of Bear River to the injury of plaintiffs' saw and grist mills situated on that stream.

The original complaint was filed March 6th, 1857, and an amended complaint filed January 18th, 1858. The difference between the original and amended complaint consists in the substitution of the phrase " one thousand inches of water sectional area, with a two and one-half foot head," instead of " one thousand cubic inches of water."

Among other things the complaint avers that plaintiffs " are lawfully possessed of a certain saw-mill and grist-mill, works and premises, with the appurtenances, situate and being in the county of Yuba, California, and situate upon a stream called Bear River, and by reason thereof, etc.　* * *　ought to have and enjoy the benefit and advantage of the water of said stream or watercourse　* * *　called Bear River."

The complaint also avers, in substance, that, by reason of the diversion of the water by defendants' ditch, plaintiffs have lost the use of their mills; have suffered in the reputation of the mills; have been put to great expense on account of their not running; have lost the profits which would have accrued, and claim damages in the sum of twenty-five thousand dollars.

The complaint describes defendants as the "Bear River and Auburn Water and Mining Company," composed of numerous persons unknown to plaintiffs, etc. but does not aver it to be a corporation.

An answer was filed to the original complaint denying, generally, its allegations and setting up the Statute of Limitations of three and five years, and that defendants were in possession of the land and water, etc. as public land, and using it for mining purposes. To the amended complaint a demurrer was filed, on the ground: 1st. Defect of parties defendant in not averring defendant to be a corporation, etc. 2d. Want of facts to constitute a cause of action. Demurrer overruled February 1st, 1858. The Attorney of record, Crocker, being absent, the demurrer was argued for him by Mr. Rowe. No time for answering was given, as none was asked. February 8th, 1858, the cause was called for trial, and, in the absence of Mr. Crocker, as also of the defendants and their witnesses, Mr. Rowe, an Attorney employed by Mr. C. to attend to serving notices, etc. appeared, and a continuance being refused, conducted the trial for defendants. Defendants asked the following instructions, which were refused and exceptions taken :

1st. That unless the jury believe, from the evidence, that the defendants turned the waters of Bear River into the ditch themselves, the plaintiffs cannot recover.

2d. That the defendants are not liable for any injury occasioned by miners or others turning the water into the plaintiffs' ditch.

4th. That the jury must be satisfied, from the evidence, that the diversion of the water was not occasioned by any other cause than the defendants' dam and ditch, or the plaintiffs cannot recover.

The Court instructed the jury as stated in the opinion. Verdict for plaintiffs, twenty-one thousand and eight dollars. Mo-

tion for new trial on most of the grounds authorized by law. The grounds mainly relied on were, that neither defendants nor their Attorney of record, Crocker, knew of the trial until it was over, because of an alleged verbal agreement on the part of Bryan, Attorney of plaintiffs, not to bring the case on without notice to Crocker, and that there was no issue, no answer having been filed to the amended complaint.   The motion was based on affidavits by one of the defendants and others, and by Crocker, stating the alleged agreement with Bryan, surprise, etc. an answer being annexed.

A counter affidavit was filed by Bryan, denying any such agreement, according to the best of his recollection.   The Court overruled the motion, on the ground that the affidavits of defendants were contradicted, and that it would not notice verbal agreements between counsel.   And, further, that the defendants were not entitled to answer the amended complaint after demurrer overruled, without leave of Court on motion.   Defendants appeal.

*E. B. Crocker* and *Gregory Yale*, for Appellants, argued : 1st. That the complaint was defective in not averring that plaintiffs were the riparian owners, or the first appropriators, of the water of Bear River, and that the allegation of possession merely was insufficient; citing, *Tuolumne Company* v. *Chapman*, (8 Cal. 397,) *Parke* v. *Kilham*, (Id. 79,) to the point, that diversion of a watercourse is a nuisance.   The owner of the property must bring the action.   (Practice Act, Section 249; *Leigh Company* v. *Independent Ditch Co.* 8 Cal. 323; *Crandall* v. *Woods*, Id. 144.)

Counsel also argued, that *Tartar* v. *Spring Creek Water Company*, (5 Cal. 397,) and *Fitzgerald* v. *Urton*, (Id. 309,) go too far in protecting the appropriators of water, for mill purposes, and town lots against miners.   That the mill in this case being forty miles below the point on Bear River, where defendants' ditch takes the water, to give plaintiffs exclusive use of the water for the purposes of the mill, is a violation of the entire policy of the State relative to mining interests.

2d. The demurrer should have been sustained upon the ground that no damage is set forth in the complaint.   The only mention of damages is in the prayer, as part of the relief claimed.   (Prac-

tice Act, Sec. 39.) The particular circumstances out of which the damages arose, are no where stated in the complaint. (*Goodman* v. *Stebbins*, 2 Cal. 103; 1 Saund. Pl. and Ev. 918, Ed. of 1851; 1 Chitty's Pl. 338, 396; Sedg. Measure of Damages, 574, 575; Chitty's Pl. 385—388; 8 T. R. 133; Peake's N. P. C. 46, 62; 9 Coke, 113, *a;* 1 Saund. 346, *a. b. n.* 2; 2 East. 154; 1 Saund. 243, *n. 5;* Vin's Abr. Ev. *tit. b.* 6. See, also, 9 Wend. 425.) The doctrine is unquestionable. (*Bogart* v. *Burkhalter*, 2 Barb. 525; *Donnell* v. *Jones*, 13 Ala. N. S. 490; and *Rowand* v. *Bellinger*, 3 Strobh. 373.)

3d. The demurrer should have been sustained upon the ground that there was not a proper party defendant.

The 29th Section of the Practice Act requires the complaint to contain the names of the parties to the action, plaintiff and defendant. The complaint was not framed under Section 69, but under Section 14. This section has been decided in *Andrews* v. *Mokelumne Hill Co.* (7 Cal. 333,) to be applicable to equity cases only, and not to actions at law. This is strictly an action at law. If it was intended to declare against the defendants as a corporation, such should have been averred. (Wood's Dig 115, Art. 448; 6 Cal. 186; 5 Id. 503; 4 Black. 50; 4 Sandf. 657, 659.)

As to errors on the trial. The paper purporting to be a deed from B. J. Van Court to McDonald, dated March 25th 1854, is void on its face, and should not have been admitted in evidence. (Story's Agency, Secs. 147, 149, Note 4.) The name of the principal is not signed to it, nor is he described in it as grantor, and the Attorney had no power to make a deed, his power not being under seal.

Without this paper, plaintiffs could not show themselves prior appropriators of the water, or that they had title by connecting themselves with the possession of B. J. Van Court, in 1850.

The power of attorney was not under seal, and hence the principal was not bound by a deed signed by the agent. (Dunlap's Paly. 157, Note A, to top page 156, Note C, top page 157.)

Under this paper neither the land nor the grist-mill could be sold. (6 Cal. 373; 7 Id. 171.)

The contract made between A. Van Court and plaintiff, Blackburn, does not give him any interest in the land or saw-mill, and yet he has recovered damages jointly with McDonald for injury

to the saw-mill in which he has no interest. There is, therefore, a misjoinder of causes of action. B. J. Van Court should have been co-plaintiff instead of Blackburn. Tenants in common must join in an action for the diversion of a water-course. (8 Cal. 77.)

A water right cannot be transferred in any way except by deed. The mere delivery of possession of the land, and the mills by which the water is used, will not do. (Angell on Water Courses, Secs. 168—172; Wood's Dig. 106, Sec. 6; *Hill* v. *Newman*, 5 Cal. 445; *McCanon* v. *O'Connell*, 7 Id. 152; *Jenkins* v. *Redding*, 8 Id. 598; *McKeon* v. *Bisber*, 9 Id. 137; *Partridge* v. *Townsend*, 10 Cal. 181; 5 Id. 40—87, 249, 485; 4 Id. 33, 69; *Bird* v. *Lisbros*, 9 Id. 1; 4 Id. 209; *Howard* v. *Easton*, 7 Johns. 205; *Stephens* v. *Mansfield*, 10 Cal; *Simpson* v *Downing*, 23 Wend. 320; *O'Keiffe* v. *Cunningham*, 7 Cal.) Some of the cases cited refer to transfers of mining claims. (See, also, 1 Denio, 550; 5 Barb. 364; 7 N. H. 523; 1 Sugden's Vendors, 111, 126; 16 Wend. 28; 8 Barb. 130; *Riddle* v. *Brown*, 20 Alb. 412.)

During the argument it was suggested that, though these papers did not constitute a conveyance, yet they might give a right to call for a deed. But the complaint is strictly for a legal cause of action, following Chitty's forms literally. And this Court has held that the essential and inherent distinctions between law and equity are not abolished by the Practice Act. (*Smith* v. *Rowe*, 4 Cal. 6; *De Witt* v. *Hayes*, 2 Id. 463.)

And if a party has an equitable cause of action or defense, his pleadings must be framed accordingly. (*Thayer* v. *White*, 3 Cal. 228; *Smith* v. *Rowe*, 4 Id. 6; *De Witt* v. *Hayes*, 2 Id. 463; *Coates* v. *Campbell*, 3 Id. 191; 4 Id. 227; 5 Id. 156; 6 Id. 56.)  ·

But plaintiffs insist that, being in possession, they had a right to maintain the action upon proof of that fact alone, and cite numerous authorities. These authorities merely show that persons in possession of land can maintain trespass, that they are proper parties; but the case of *Fentiman* v. *Smith*, (4 East. 107,) shows that possession is insufficient in actions for the diversion of water, unless the plaintiff has the right to the use of the water. The question is who has the right to the use of this water? We say that, as against the plaintiffs, defendants have the better right to it, as they appropriated it prior to plaintiffs.

(*Irwin* v. *Phillips*, 5 Cal. 140; *Tartar* v. *Spring Creek Co.* 5 Id. 395; *Bird* v. *Lisbros*, 9 Id. 1.)

In the answer we plead limitation of five years, and also of three years.

An action for "trespass upon real property" must be commenced within three years. (Wood's Dig. 47.)

This is an action, not for the "recovery of real property," but to recover damages for a "trespass upon real property," that is, for the diversion of the water from plaintiff's land. It is, therefore, governed by the three years' limitation law.

The evidence shows that we appropriated the water in June, 1851, actually diverted it in the fall of 1852; and this action was not commenced until March 6, 1857, more than four years afterwards. The statute, therefore, commenced running, at least from the time we actually diverted it. This was before the sale to plaintiffs, which was in March, 1854.

If they claim that their right of action accrued from the time of their purchase, and that the statute only commenced running, as to them, from that time, we reply that a party cannot stop the running of the statute by conveying to a third party.

In addition to the above it is urged, that the offer to prove that the water was diverted by others, below the point where the defendants' ditch takes water from Bear River, and the rejection of the evidence by the Court below, entitles the defendants to a reversal of the judgment. The charge is against a particular company, and that company proves that the injury was committed by others. As an elementary rule of pleading, the evidence is material, and goes directly to the issue. A general denial would let in this evidence.

In *Lower* v. *Winter*, (7 Cowen, 264,) the Court admits that improvements can be sold by parol, but refers to *Howard* v. *Easton*, (7 Johns. 205,) as a contract for the sale of the possession to the land, and the case is placed upon the principle that possession is *prima facie* evidence of title to land. This is the principle contended for by the plaintiffs; that their possession is evidence of title, and yet that this possession can be sold by word of mouth.

Is the water privilege attached to the improvements or to the land, the possessory interest in the land? If to the improvements which could be removed and placed on another piece of

McDonald & Blackburn *v.* Bear River and Auburn Water and Mining Company.

land, then the water privilege would follow the improvements to another stream, or another district, where timber is not so scarce. But in all probability the water right will be held to follow the land, and not the improvements.

Mr. Brown states the rule emphatically in his work on the Statute of Frauds. In Sec. 231 he says: "Mere possession of land seems to be properly regarded as such interest in or concerning the land itself as cannot be contracted for or disposed of without writing."

How, then, can the plaintiff claim the possessory title, on conveying the water right, without connecting themselves by deed with those in possession prior to the appropriation in June, 1851, by the defendants?

*Bryan & Filkins,* for Respondents.

The Court is not bound to fix a time to file an answer after demurrer overruled. The party must apply for time if he desires it. (Practice Act, Sec. 67.)

Defendants were represented on the trial by an Attorney, and that the Attorney of record was absent, is no fault of plaintiffs.

The complaint is sufficient without averring ownership, etc. It is taken literally from 2 Chitty's Pleading, 785—793; (see also, 1 Chitty Pl. 379, 380; 1 East. 244; 4 T. R. 719; 5 East. 276; Com. Dig. Pl. C. 39; 2 Lord Raymond, 1228; 2 Saunders' Pl. and Ev. Vol. 2, Part 1, 462, 463; Angell on Water Courses, Sec. 407, and cases cited; 18 Conn. 243; 8 Barr, 13.)

This Court has never decided otherwise.

It is not necessary in an action for the diversion of a watercourse, that the particular circumstances out of which damages arose should be stated in the declaration. (See 2 Chitty, before cited; 17 Com. 297; Stephens on Pleading, 428; 1 Gilman, 544; 2 Johns. 149.)

The point as to want of proper party is not tenable, under the 69th section of the Practice Act. Besides, having answered the complaint without raising the question, the demurrer to the amended complaint only goes to the portion amended. (Practice Act, Sec. 45.)

The various papers offered in evidence were properly admitted, the defendants not specifying any ground of objection.

(*Provost* v. *Piper*, 9 Cal.) Nor could defendants question the proper execution of the papers, because they were not subsequent purchasers, nor was there any privity of interest between their right to the water and the right of plaintiffs. (8 Cal. 187.)

Upon the point that a new trial was correctly refused, we cite: (*Rogers* v. *Huie*, 1 Cal. 429; *Cooke* v. *Stewart*, 2 Id. 348; *Brooks* v. *Lyon*, 3 Id. 113; *Speck* v. *Hoyt*, 3 Id. 413; 3 A. R. Marshall, 81; 7 Smedes & M. 270; 2 Zabriskie, 19; *Steret* v. *Culver*, 6 Mo. 254; 2 Bibb. 177; 4 Humph. 229; 1 Caines, 111; 8 Mo. 186; 3 Bibb. 80; 2 Cowen, 578.)

As to the Statute of Limitations, we say: The only evidence upon the subject of adverse possession by defendants was that of J. A. Hill, a witness called by us, and he swears that the Bear River Company turned their water into the ditch "about September, 1852."

This suit was brought early in the spring of 1857, inside of the five years. We could not be injured until the water was turned into the ditch. If we were injured, then dating from the moment they turned in the water the five years lacks six months of having expired. But the fact is that we were not injured until 1854. Then: 1. If the limitation of five years could run in this case we are inside of it from the time of the turning the water in. 2. It could not run until we ascertained their possession.

The former opinion of this Court is erroneous in regard to the facts in relation to Blackburn's interest. We did not introduce the paper between Alexander Van Court and Blackburn for the purpose of showing title, but to locate the time he went into possession. (*Provost* v. *Piper et al.* 9 Cal. 552.) Throw the paper out of the case and the testimony shows that we did succeed to Van Court's possession, and this is sufficient. (*Biquette* v. *Caulfield*, 4 Cal. 278; *Morris* v. *Russell*, 5 Id. 249; *Partridge* v. *Townsend et al.* 10 Id.)

If we have succeeded to Van Court's possession, and his possession was prior to the defendants', we can recover. It is mill property upon U. S. Government land, and a verbal sale and transfer of the possession would be sufficient.

A party who does not claim title, but is treated as a wrong-

doer, cannot go behind our possession, whether it be actual or constructive. (*Bequette* v. *Caulfield*, 4 Cal. 278, 279.)

If the bill of sale or agreement was of any consequence to us, they failed to make any objection to its introduction in evidence, and it is too late to object to it now. (*Provost* v. *Piper et al.* 9 Cal. 552.)

We are in possession under B. J. Van Court, he being in possession in 1854 by the possession of his agent, A. Van Court. When we " succeeded to the possession we succeeded to Benjamin Van Court's possession, which runs back to 1850, the waters of Bear River being used and appropriated by A. Van Court that year.

If we had alleged title, we might be held to prove it. If the half of the title be in B. J. Van Court at the time of the suit, yet still, we, succeeding to his possession, are the only persons who can sue. If Van Court be landlord and we tenants, he cannot sue. (1 Chitty's Pleadings, 175, and Note 4 and authorities cited.)

The party in possession of real property is the only person who can maintain this action, whether it is for an injury to the land or a right growing out of land, such as to water. Van Court, even if he had title, could not maintain this action against a stranger and trespasser. (*Miller* v. *Fulton*, 4 Ham. Ohio, 433 ; 1 John. 510 ; 3 Id. 468 ; 12 Id. 183 ; 8 Pick. 235 ; 15 Id. 32 ; 19 Conn. 154 ; 2 Greenl. Ev. Sec. 618.) As to parol evidence of ownership, see 5 Gil. Ill. 506.

Now, McDonald has a clear and admitted right to one-half interest (running back years behind the possession of defendants) to the waters of Bear River. B. J. Van Court, as well as his agent, A. Van Court, have been out of possession since 1854, during which time the injuries complained of have been committed. B. J. Van Court cannot sue, being out of possession. McDonald is admitted to be rightfully in possession, and Blackburn has been in possession with him during the committing of the grievances, claiming ownership, whether rightfully in possession or not. McDonald cannot sue alone, for all in possession must join in the action.

In reply to a supplemental brief of Appellant, counsel argued, that *Howard* v. *Easton* (7 Johns.) was a suit *inter partes*, and had

McDonald & Blackburn *v.* Bear River and Auburn Water and Mining Company.

no application; and the defendants here being trespassers a writing was unnecessary. And, further, that plaintiffs had writings, which, at least, are contracts to purchase, and, as such, admissible in evidence to show the character of their possession. (*Moore* v. *Moore*, 21 Maine, 350; 1 Chit. Pl. 62; 1 East. 244; 4 Taunton, 547; 3 Met. 239; 14 Pick. 297; 2 Greenl. Ev. 618.

At the July Term, 1858, an opinion was delivered by BURNETT, J.—TERRY, C. J. concurring, reversing the judgment, on the ground that plaintiff, Blackburn, had no interest in the premises, not connecting himself with the possession of A. Van Court.

On rehearing, BALDWIN, J. delivered the opinion of the Court —TERRY, C. J. and FIELD, J. concurring.

1. Many technical and minor points are taken by the Appellants which we do not deem it necessary to consider. Some of these are frivolous, and some unsustained by the record. The refusal of the Court to grant a new trial upon the affidavit of the Attorney was proper. No sufficient cause was shown. If we could listen to affidavits of oral agreements or understandings of counsel, yet the fact that an Attorney appeared for the defendant and contested this case on the trial, and the counter affidavits of the plaintiffs' Attorneys, sufficiently negatived the grounds of the motion for this cause.

2. Nor is there anything in the objection taken in the demurrer to the complaint. It is a very formal pleading, and is, in itself, unobjectionable. It follows the approved precedents in actions for the diversion of water. It avers the possession of the plaintiffs of the land, and the subject of the injury; and that is enough against trespassers which the defendants are charged to be.

3. Still worse grounded is the objection that ten days were not given the defendants to answer the formal amended complaint.

4. Upon the trial the plaintiffs introduced evidence for the purpose of showing title to the water in dispute. The plaintiffs claimed that the water had been appropriated by one Van Court before the defendants' right accrued, or they had taken possession, and they claimed that Van Court had gone upon this land in 1850, and taken actual possession, and built a saw mill, and afterwards a grist mill, on public land, using the waters of Bear

River for mill purposes. Van Court remained in possession, by A. Van Court, his brother, until 1854, when he placed McDonald in possession. The following paper was executed at the time :

" Know all men by these presents, that I, Alexander Van Court, of the county of Yuba, State of California, do sell and convey all the right, title, and interest, of B. J. Van Court in the property, to wit: one saw-mill, situated on Bear River, with everything appertaining to said mill; also, the one-half of the merchant and flouring mills; also, all the machinery appertaining to said mills; one dwelling-house, kitchen, and one chest of tools, (millwright,) log chains, etc. also all the interest that the said Van Courts have in. a ferry or erection of a ferry on Bear River, near said mills; also, the pre-emption of one hundred and sixty acres of land running up and down Bear River, and belonging to said mills, and all the above named property to be free from all arrears; and I, Alexander Van Court, being my brother's legally authorized Attorney, do sell, convey, transfer, and set over, to J. L. McDonald, all the above named property, for the consideration of two thousand dollars, for which I, Alexander Van Court, receive one thousand in hand, and the other thousand at the completion of the Merchant Mills, when the same are in good operative order.

ALEXANDER VAN COURT, [L. S.]

This instrument, it will be observed, is not under seal, for though the characters (L. S.) are added to the name of Alexander Van Court, yet no words are in the body of the instrument expressive of the intent to make it a sealed instrument. It was not, therefore, a deed, but only an executory agreement, if sufficient in other respects. It is insisted that this paper was not admissible in evidence ; but no specific objection was taken to it at the time it was offered. The general objection was not enough to exclude it, unless plainly upon its face inadmissible or void. The plaintiffs claimed by possession, and this paper, if not otherwise admissible, was proper evidence to show the date of their possession, and, perhaps, the character under which McDonald entered. Besides, the actual occupancy seems to have been in Alexander Van Court, and so far as plaintiffs had gone at the time of offering this paper, it might have been enough

to show that the person in actual occupancy, supposing this to be the deed of Alexander and not of B. J. Van Court, had surrendered his claim to the plaintiff, McDonald; so that there was no error in admitting this paper. We shall have occasion to consider this paper and its effect further when we proceed to discuss the merits of this case. The same objection, in the same form, was taken to a paper executed on the 30th March, 1853, by Alexander Van Court to his brother, B. J. and to a paper executed by B. J. Van Court, not under seal, purporting to be a power of attorney to Alexander, authorizing the sale of his saw-mill, etc. Under this power Alexander made the sale through which plaintiffs claim. The same remarks so far apply to this paper as to the other.

On the 20th March, 1854, Blackburn made a contract with Alexander, respecting the construction of a grist-mill, by which he became interested in the premises, at least to the extent of the water needed for that mill. It is urged that there was no conveyance to Blackburn, of any interest in the saw-mill or in the one hundred and sixty acres of land. The defendants claim that they appropriated the waters of Bear River in June, 1851, at a distance of forty miles above the mills; and this was prior, of course, to the actual possession of the plaintiffs, but subsequent to the first appropriation by Van Court and one Moore, under whom Van Court claimed. It would seem that if the plaintiffs relied upon their possession alone, they could not by force of it recover damages for a trespass committed before, nor for water diverted prior to their title. Their mere possession would give them title only to that which they possessed. They would take the premises as they found them; and if the water had been diverted from the old channel anterior to the acquiring of their possession, they could not regain it. It was probably in view of this principle that they sought to connect themselves with the title of their predecessors, in order to show that this water in dispute was really a part of their title or property. The ownership of water, as a substantive and valuable property, distinct, sometimes, from the land through which it flows, has been recognized by our Courts; and this ownership, of course, draws to it all the legal remedies for its invasion. The right accrues from appropriation; this appropriation is the intent to take, accompanied by some

open, physical demonstration of the intent, and for some valuable use. We have held that there is no difference in respect to this use, or rather purpose, to which the water is to be applied; at least, that an appropriation for the uses of a mill stands on the same footing as an appropriation for the use of the mines. Each of these purposes, indeed, may be equally useful, or even necessary to the miners themselves. But the nature of the use may be important, as denoting the extent of the water appropriated. Water taken for a mill is not taken as an article of merchandise, to be sold in the market; it is merely used as a motive power, and after it passes the mill and subserves its purposes, may be used as an aid to the working of the mines. But this last use must not be inconsistent with the prior right acquired by the mill owner, so far as his necessary use is concerned. This right of water may be transferred like other property. If, by the erection of a mill and the possessory right of land on the stream, the water be acquired—this being evidence of the appropriation of the water—we do not see that the right would not pass by any sufficient transfer of the possession of the property to the vendee, as owner; in fact, we do not doubt that it would. And this brings us to consider what we deem the essential matter of this case, whether the plaintiff and Blackburn got the title of Van Court, the first appropriator of the water, to this mill. We assume for proven all the disputed or disputable facts upon which the jury have passed, directly or in effect, by their verdict. The question of the possession of the premises, the mill, etc. by McDonald, by virtue of *some contract* with Van Court, is not disputed; but it is argued, that this contract gives him no title to this water, diverted and used, and sold by the Bear River Company. The grounds of this objection we will now consider: It is said that, conceding that title was originally in Van Court, it did not pass to the plaintiff, McDonald, because the paper executed by Alexander Van Court to McDonald was not legally executed so as to pass the title. The power of attorney from B. J. Vancourt to Alexander seems to be regular in form, except that it is not under seal; though professing in the body of it to be sealed, the scroll is omitted. The power authorizes "Alexander to grant, bargain, sell, and convey, my saw-mill, dwelling, etc. situated in the county of Yuba. Said mills and other im-

provements are situated on a tract or claim of land on Bear River." * * "I do grant unto my said Attorney full power to execute and deliver all needful instruments, whether under seal or otherwise * * to perform all such matters, acts, and things, as my said Attorney shall deem necessary and expedient for the complete and effectual execution of the authority granted," etc.

Under this power Alexander Van Court made the instrument first set out, which, it has already been seen, was not under seal; so that the argument of the counsel for Appellants, that the paper executed by the Attorney was void, because the Attorney could not execute a technical deed, except under authority by deed, has no application to the facts. The power authorizes the execution of needful instruments, sealed or unsealed, and seems, from the comprehensiveness of its language, to impart the largest discretion as to the terms and form of sale to the agent. Taking the agreement, or so to call it, conveyance, in connection with the power, and we can see no fatal objection to it. It is true, that, for technical reasons, a deed of an Attorney must purport to be the deed and executed in the name of the principal. That doctrine was discussed in the argument of *Dupont* v. *Wertheman,* (10 Cal.) but was not passed on by the Court. But this doctrine applies more strictly to technical deeds than to parol contracts. The power is not under seal; it is only a written authority to the agent to contract in reference to the property, etc. and the contract is made by Alexander for the right of the principal in the subject, and the paper recites that "I, Alexander Van Court, being my brother's legally authorized Attorney, do sell, convey," etc. The property sold is the property of B. J. Van Court, the principal, and the agent selling represents himself as the Attorney of the principal; a consideration is stated, and an authority to sell is shown. The vendee is put in possession and retains possession for a series of years, making valuable improvements.

That such an agreement might be specifically enforced, and was a sufficient memorandum in writing to give effect to the contract, we think cannot be disputed. (See Wood's Dig. Sec. 106.)

That by force of such agreement, and the possession taken under it, the plaintiff, McDonald, acquired an equitable estate in the premises, giving him a present right to its full enjoyment, we think, clear, and this right, being united with the present

possession, enabled him to maintain any action for an interruption of the possession or any injury to the property.

The case of *New England Marine Insurance Company* v. *De Wolf*, illustrates the distinction between sealed and unsealed instruments, and shows that the rule requiring the instrument to be executed or signed, in the name of the principal, does not apply to instruments not under seal, and the same distinction is expressly stated in *Andrews* v. *Estes et als.* (2 Fairf. 267). The cases in all the States, in regard to instruments not under seal, agree that if the name of the principal appear in the instrument, and the intention, on the whole, be apparently to bind him, he will be the party bound, if the agent had authority, although the instrument be signed in the agent's name only. (See *Farmers and Mechanics Bank* v. *Troy City Bank*, 1 Doug. 458, 467.) " In an agreement not under seal," said the Chancellor, in the late case of *Townsend* v. *Hubbard*, (4 Hill's N. Y. 351, 357 ; and see *Townsend* v. *Corning*, 23 Wend. 436, 440,) " executed by an agent or Attorney on behalf of his principal, and where the agent or Attorney is duly authorized to make the agreement it is sufficient as a general rule, if it appears in any part of the instrument that the understanding of the parties was that the principal, and not the agent or Attorney, was the person to be bound for the fulfillment of the contract." (See, also, *Evans* v. *Wells*, 22 Wend. 325, 335, 340.) In South Carolina, in some earlier cases, this was not admitted, and it has been decided that a note in the form, " I promise to pay," etc. signed " J. L. R. for J. J." bound the agent personally, and did not bind the principal. (*Fash* v. *Ross*, 2 Hill's South Car. 294 ; *Taylor* v. *McLean*, 1 McMullan, 352 ; *Moore* v. *Cooper*, 1 Spears, 87.) But all these are overruled in *Robertson* v. *Pope*, (1 Richardson, 501) ; and the distinction recognized between deeds and parol contracts, that in the former the sealing and delivery must be in the name of the principal; but in the latter it is enough if it appear that the contract was intended to be made for the principal.

5. There is no foundation for the notion that this power of attorney did not embrace the water privilege. The mill sold, or proposed to be sold, would be wholly valueless without it, and the general language is : " including the mill, dwelling," etc. " said mill and other improvements are situated," etc. The deed

to a house is held to include the land on which it is, and it would be absurd to hold that a deed to a mill, only of use because of the water which moves it, does not include the right to the water, especially when the phrase *et cetera*, to which Lord Coke attaches such extension of meaning, is used.

6. We have, in these remarks, assumed that these papers were as they are set out in the Appellant's brief. But we do not, after looking over the transcript, find them set out. On page twenty-one we find that some papers of this general character were offered by plaintiff and objected to generally by defendant. But the grounds of objection are not given, and the papers not even particularly described. And it seems that "a bill of sale of a portion of mills and property given by A. Van Court to John C. Blackburn" was given in evidence by plaintiff; and this seems to have been done without objection. The presumption is, that what is done by a Court of general jurisdiction is properly done, and it rests with the losing party to show affirmatively that there was error.

7. It seems that Blackburn was in possession with McDonald, and it might be inferred that he was interested with him in this mill company and the right to the water. The saw-mill was put up January 8, 1850 ; the grist mill was commenced in 1853, and was put in operation in the fall of 1854, built on the same side of the stream as the saw-mill. It seems that the mill, before the ditch of defendants, required and used one thousand inches of water. The instruction of the Court limited the plaintiff's claim to the amount of water first taken for the mill.

The Appellants contend that they took, by the location of their ditch, all the water not needed for the saw-mill; and that their right, by appropriation, was perfect to all, subject only to the right of the mill-owner; that the right of the mill-owner was limited to a use of this water for this particular purpose, and ceased immediately when the saw-mill, from want of timber in the neighborhood, or otherwise, ceased its operations as such ; and that the plaintiffs, having subsequently built a grist-mill, are not entitled to the water for that mill. Probably it would be enough to say in answer to the ingenious argument on this subject, that the point seems to be taken here for the first time ; it is not taken in the answer, nor was it made on the trial. No

instruction on the subject was asked by the counsel; nor was it made a point on the motion for a new trial. The point rests on particular facts or inferences, which, the jury, if properly instructed, might or might not draw from the evidence—such as the extent of the defendants' appropriation, or of the plaintiffs', as evidenced by the acts of both—the declarations, the relative quantity of water needed for the grist-mill or the saw-mill, the quantity of timber, etc. etc. and many other considerations, which a Court of Appeals could scarcely be called upon for the first time to determine. But even if we felt disposed to permit this matter to be asserted here for the first time, we are far from being convinced that the point is well taken. It by no means follows that, because in an agricultural district, a party takes up a mill-seat, gets a good title—as we esteem possession of public land to be—to the land, and makes valuable permanent improvements, all dependent on the use of the water as a motive power —that he means only to use the water appropriated for the first purpose to which he applies it. At any rate a very clear case should be made that that purpose had been fully answered before his title to the water should be held to be abandoned. The mere fact that he chooses to apply the water which he had a right to use, in whole or in part, if he so chose, in sawing timber, to grinding wheat, is no abandonment of his title to it. But the question is not so made on this record as to require from us a decision upon this last point.

8th. The plaintiffs claim that they were in possession of this property and these mills in 1854; that at that time, and since, they were entitled to this water to work their mills; that this quantity was not permitted, at the time laid in the complaint, to flow to their mills, but was diverted by the ditch; and for this they claim damages. Possibly it was enough for the plaintiffs to show the simple fact that they were in the use of this water, as against every one claiming by subsequent right, without calling to their aid any antecedent title to their entry, for the location by defendants of their ditch in 1851, supposing that to be an appropriation of waters of Bear River from that time, was only an appropriation of so much as was not before appropriated by Van Court, and no abandonment is shown by him; but on the contrary, it is shown by plaintiffs' proof that McDonald and

Blackburn succeeded to the possession of Van Court. For the damages resulting after they came into possession, it would seem they could jointly maintain this action on that possession; at all events, this question of misjoinder, or want of common interest in the subject of the suit, should, if it appeared by the plaintiffs' evidence, have been taken by motion for nonsuit, or upon instructions. The plaintiffs, if the point had been made, might have dismissed the suit as to Blackburn, but if permitted to wait until after a new trial is denied, without making the point, it would throw upon us the trouble of searching every transcript to see if ingenious counsel here were right in the suggestion of points which ought to have been, but were not, made below. This would give a great advantage to the Appellants, for a statement is usually made up with reference to the points actually made below, and there would often be advantages taken in the statement, or effect given to it wholly different from what was foreseen or expected. Besides the unsatisfactory nature of such an inquiry, our labors would be interminable if we were compelled to search every record for the purpose of seeing if some new point resting on the evidence, but never taken by counsel below, was well founded in law or fact.

These observations apply to the question on the Statute of Limitations, insisted upon as a defense. No instruction was asked. Nor do we see how it could be. The injury was not from the location of the defendants' ditch. That was a subsequent appropriation secondary and subordinate in right to the plaintiffs as it was claimed. The diversion complained of was since the period barring the claim for damages; and the statute could not operate merely from the fact that the defendant had made a claim; it must have been shown that he made an exclusive claim with possession.

The instruction given by the Court, at its own instance, fairly placed the law before the jury on the main question in the case. It is in this language: "If the jury should find from the evidence, that the plaintiffs were the first to acquire a right to the use of the water flowing in Bear River, and that the defendants subsequently diverted the waters of the stream to the extent of depriving the plaintiffs of the same quantity of water which they originally possessed as prior locators, then they should find

for the plaintiff—but if the water which the defendants took by means of their ditch, or other means, did not diminish the quantity of water, then no injury resulted to plaintiffs, and they should find for the defendants. The principle is, as decided by our Courts, that he who is first in time is first in right. The jury should take into consideration the quantity of water which was necessary for the plaintiffs in running their mill, for if there was an excess of water for this purpose, any other locator or proprietor is entitled to have it."

9th. The three instructions refused were, as proposed, manifestly erroneous upon their face, and were properly denied.

10th. There is no error in admitting proof of Dwyer's signature to the paper; no grounds for excluding it were assigned, nor does it even appear that the paper was admitted or read. It might have been proper to locate and explain the premises.

11th. The objection to the refusal to admit the question, " Do you know of any other ditches taken out of this stream, or do you know whether the waters are taken out above the mill by any other company, for any other purpose?" does not give us such information in reference to the subject as to enable us to decide whether the question was admissible. This might well have been refused on several grounds. It is not material whether there was at the time of the trial any other diversion of water from this dam; nor is it apparent that there was error in refusing a question so broad as to admit proof of water taken so far above the mill as to be beyond the ditch of defendant. It must be affirmatively shown that there was error in the ruling of the Court, before, on an incidental point like this, we can reverse on account of it.

We have given the case all the consideration we could extend to it, consistently with other engagements, and we think the judgment should be affirmed.

See *Ortman* v. *Dixon, ante.*