No. 21358.

Four Counties Water Users Association *v.* Colorado
River Water Conservation District.
(425 P.2d 259)

Decided January 23, 1967. Rehearing denied April 10, 1967.

Ireland, Stapleton, Pryor & Holmes, D. Monte Pasco, for plaintiff in error.

Frank Delaney, for defendant in error.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

This writ of error is directed to portions of conditional decrees for the appropriation of water entered by the district court of Routt County in a supplemental adjudication of water rights in Water District 58.

The court granted to defendant in error, Colorado River Water Conservation District (hereinafter referred to as the District) a conditional decree for what is described as the Toponas Project with the priority date in 1951 and an additional conditional decree for what was denominated as the Wessels Project, with a priority date in 1954.

There is no dispute that the district is entitled to have awarded to it the conditional decrees. Only the priority dates are challenged.

Plaintiff in error Four Counties Water Users Association (hereinafter referred to as Four Counties) objected and excepted to the priority dates awarded to the district for the reasons:

1. That if an appropriation of water has been initiated as of the dates claimed and awarded, the due diligence required by law from those dates up to September, 1961, had not been shown, and

2. That what was done as of the dates claimed was

not intended to and did not constitute an appropriation.

The question whether due diligence was shown since the priority dates granted in the district's decrees, and the further problem whether the Bureau of Reclamation of the United States is a predecessor in title and claim of the District need not be answered in view of our resolution of the question whether there was an actual intent to appropriate as of the dates in dispute.

■ We find from the facts hereinafter set forth and from the law applicable thereto, there was not an appropriation by either the District or the Bureau of Reclamation as of the priority dates granted to the District.

A summary of what was done initially on both projects upon which the claims for the decrees are founded follows:

### THE WESSELS PROJECT

In the record made in support of the decree for the Wessels Project it was described as one to divert water of the Yampa River for the purpose of irrigating lands along the river above Steamboat Springs. The project includes construction of a small reservoir on the Yampa River and a canal from the reservoir. In July of 1954, the Bureau of Reclamation instituted a reconnaissance investigation of the Yampa White Basin, particularly that component which was denominated the Wessels Project. This investigation consisted, among other things, of a land classification survey to determine whether the lands which would be irrigated by the project were suitable therefor and would be benefited thereby. This reconnaissance investigation resulted in the publishing in 1957 of a Yampa White Project Reconnaissance Report issued by Region 4-B of the Bureau. As to the nature of this report and of the reconnaissance conducted three years earlier, one Mr. Jennings, Project Manager of the Bureau of Reclamation, at Grand Junction, offered uncontroverted testimony which leaves

little doubt as to what was intended by the work of 1954. He testified:

"Generally speaking, the preliminary or reconnaissance investigations are a prelude to going into this very costly feasibility type of investigation. We use those [referring to the reports of the Yampa White reconnaissance report] as a guide to indicate where there is a feasible project and if in our judgment there isn't a project in here you wouldn't schedule it for detailed investigations."

In further referring to the 1957 Yampa White Project Reconnaissance Report, Jennings testified that such report would go through channels to the Department of Interior and Bureau of Reclamation and "would probably go to Congress *for information* purposes; *it wasn't a feasibility report* or a report *on which project authorization is made* * * * it would go *more for their information.*" (Emphasis supplied.)

Thereafter were the following questions and answers:
"Q. And Congress would then specifically authorize the investigation after the detailed feasibility report and appropriate money for it?
"A. No. The *first step* would be to appropriate monies for a *detailed* investigation.
"Q. But would they have to appropriate that to the Wessels Project?
"A. That is right.
"Q. To investigate it?
"A. That is right.
"Q. They have not done that to date?
"A. *They have not done that.*" (Emphasis supplied.)

After the publication of the 1957 report, the Bureau, according to Mr. Jennings, *did not undertake "any specific work"* *in connection with the project.* The first work which would show an *intent to take* water was described by witness Philip Smith, Secretary-Engineer for the Colorado River Water Conservation District. He testified that the District "studied a revised plan on the

Wessels Project with a larger reservoir at the Pleasant Valley Reservoir site, but in order to conform with the plan as more or less adopted and that the Bureau was standing by on the Wessels Project, our final filing on the project was for the Bear Reservoir. The canal system there was no change in it."

On January 23, 1962 the District filed a map and statement with the State Engineer pursuant to law. The map and statement were based upon surveys made by the District in September of 1961. There is no dispute that these surveys were such as to constitute the initiation of an appropriation, and there is further no dispute that due diligence was shown from the time of those surveys up to the date the District presented its claim in July 1962. *Four Counties Water Users Association v. Colorado River Water Conservation District*, 159 Colo. 499, 414 P.2d 469.

## THE TOPONAS PROJECT

The evidence with respect to the Toponas Project is similar. The land classification survey undertaken by the Bureau of Reclamation was commenced in August, 1951. Regarding the nature of the work that was done on the Toponas Project by the Bureau is the following testimony:

"The initial work done in this area was done under what we call a *basin type investigation.* The purpose of that investigation was to determine *potential and feasible projects within the basin* area; also, to make what we call *an inventory survey* of that area, including water potential, land potential and various other factors." (Emphasis supplied.)

The Toponas Project was reported on in February, 1954, by incorporation in the "Cliff Divide Project" [Toponas unit]. It was similar to the report in which the Wessels Project was discussed. A pertinent statement in the report is the following:

"The extent to which the planned transmountain diversion from the Yampa River Basin would conflict

with potential developments in that basin has not been determined. *This should be given further consideration in connection with investigations of the Yampa River Basin before detailed studies of the Toponas unit are undertaken.*" (Emphasis supplied.)

It is undisputed that on February 26, 1963 the District commenced surveys on the project which resulted in the filing of maps and statement of claims with the State Engineer on October 4th of the same year. These surveys were the same kind and embodied the same features as the Toponas Project contemplated by the Bureau report with the exception of a change of the alignment of the Toponas canal.

It is an inexorable rule of Colorado water law that, in order to establish a right to relate back to a point of time from which the priority is to commence, there must have been on the date claimed some act *evidencing an intent to take water* and to apply it to a beneficial use. As we stated in *Rocky Mountain Power Co. v. White River Electric Assn.*, 151 Colo. 45, 376 P.2d 158:

"* * * although an appropriation is not complete until actual diversion and use, still, the right may relate back to the time when the first open step was taken giving notice of intent to secure it."

This court has defined "an appropriation" as "the *intent to take* accompanied by some open physical demonstration of the intent and for some valuable use." (Emphasis supplied.)

See *Fort Morgan Land & Canal Co. v. South Platte Ditch Co.*, 18 Colo. 1, 30 Pac. 1032; *Larimer Co. R. Co. v. People, ex rel. Luthe*, 8 Colo. 614; *McDonald v. Bear River Co.*, 13 Cal. 220.

We find from the description of the work done by the Bureau of Reclamation in the reports previously alluded to that there was no intent to take water and no physical demonstration from which such intent could

be inferred so as to constitute the initial step in an appropriation.

In *Four Counties Water Users Assiciation v. Colorado River Water Conservation District, supra,* we made the following apt statement:

"* * * We have held that what constitutes the 'first step' is not the same in every proposed diversion because the facts must be taken into consideration in each case on an *ad hoc* basis; * * *."

Taking the facts in the case at bar, it is apparent that the Bureau made only a preliminary study "for information" undertaken along with many similar studies over virtually every water shed on the Western Slope. There was not at that time any determination as to which of the many projects would be undertaken. Many never go beyond "the feasibility study." In the Toponas and Wessels Projects almost a decade passed from first "reconnaissance investigation of the whole basin" before the first step showing intent to appropriate was instituted.

Not every kind of survey reflects an intention to take water. As we stated in *Fruitland v. Kruemling,* 62 Colo. 160, 162 Pac. 161:

"The grantors of the plaintiff in error did not even entertain an intent which would satisfy the law when on the 21st day of May, 1900, they visited the premises and then and there determined to initiate and ultimately perfect rights by virtue of their irrigation project. The right, as well as the intent necessary to acquire it, has its foundation in practical considerations. There is little doubt that if, upon completion of the preliminary survey and reconnaissance, the project proved utterly impracticable and unwarranted as a business venture, the present dispute would never have arisen. Therefore, the most that can be fairly assumed is that they determined on that date to construct a reservoir and ditches, if it should prove practical and feasible to do so. This fact could only be ascertained by examining the topog-

raphy of the surrounding country and verifying such observations by actual survey, and undoubtedly until this had been done, there was not, and in the very nature of things could not have been *any definite and fixed intention to proceed further*. The law does not permit an intending appropriator to invoke the benefit of remote contingencies to unduly extend the doctrine of relation." (Emphasis supplied.)

As has been stated, there is no dispute that the District surveys, followed by the filing of the maps and statements, demonstrate concretely an intention to take water and to go forward with the projects described. The dates on which such steps were taken were also not in dispute.

Accordingly, the judgment is reversed with directions to the court to modify the District's conditional decrees as of the dates such surveys were taken — in September 1961 on the Wessels Project, and in February 1963 on the Toponas Project.

MR. JUSTICE HODGES and MR. JUSTICE KELLEY not participating.