Mr. Justice Day
delivered the opinion of the Court.
This writ of error is from a supplemental adjudication of water rights held by the district court of Grand County for Water District 50. Involved are conditional decrees awarded to claimants Middle Park Water Conservancy District in cooperation with the Colorado River Water Conservation District, defendants in error. They will be referred to as Middle Park, and the District, respectively.
The challenge to the decrees relates to priority dates claimed and allowed in connection with what has been denominated as the Rabbit Ears and Troublesome Projects. The protest and objection to the Rabbit Ears decree is asserted by plaintiff in error, Four Counties Water Users Association, hereinafter referred to as Four Counties.
The controversy concerning the decree granted Middle Park and the District for the Troublesome Project affects the prior adjudicated rights of the defendant in error, Lynn A. Matheson, to whom we will refer by name. The decrees will be discussed as follows:
THE RABBIT EARS PROJECT
Middle Park made a statement of claim for water in connection with the Rabbit Ears Project and requested a priority date of August 18, 1959 based on a survey which it had undertaken as of that date with the cooperation of the District. This work resulted in the filing of a map and statement of claims for the project with the state engineer a few months thereafter. Claim was filed and an adjudication therein held November 2, *431 1959 resulting in a conditional decree for the project being granted as prayed for with the priority date of August 18, 1959. There is no objection to this original adjudication. Middle Park later filed an amendment to its statement of claim for this project and claimed a different and earlier date for its priority based upon reconnaissance investigation undertaken on the Rabbit Ears Project by the Bureau of Reclamation of the United States starting on September 15, 1950.
At the supplemental hearing on this amended statement, Four Counties appeared and objected and excepted to it, asserting that it would be adversely affected because of claiming a priority of June 2, 1958 for the same waters as claimed by Middle Park.
After hearing held June 13, 1962 Middle Park’s amended claim was allowed by the court and a new decree was awarded to it relating back to the 1950 date.
The evidence in this case relating to the initial work on the Rabbit Ears Project by the Bureau is almost identical to that shown to have been undertaken in the Wessels and Toponas Projects discussed in Four Counties Water v. Colo. River, 161 Colo. 416, 425 P.2d 259. Studies made by the Bureau in 1950 were of the same nature and for the same purpose as those undertaken in the other projects and, in fact, the report on the Rabbit Ears Project was also made a part of the 1954 Cliff’s Divide report discussed in Four Counties Water v. Colo. River, supra. The nature of the Bureau’s work is more fully set out in Four Counties Water v. Colo. River, supra and is not repeated in this opinion. That case should be read in conjunction with this one.
There are other factors, however, which are asserted as making out a stronger case for relation back to the initial Bureau reconnaissance respecting the Rabbit Ears Project. These are that this particular project was specifically identified in the Upper Colorado River Storage Project Act, 43 USC §620a, passed by the United States Congress in 1956. That legislation directed the Secretary *432 of the Interior to give priority to the planning of the Rabbit Ears Project and to a report of such planning as well. Testimony was presented that as a result of the identification of the Rabbit Ears Project in such legislation, the Colorado Water Conservation Board had scheduled 1964 or 1965 as the time when such planning would actually begin. As has been stated, Middle Park and the District joined together in 1959 in the making of surveys of the project which resulted in the filing of maps and a statement of claim for water with the state engineer.
The only difference in the factual situation between this case and Four Counties Water v. Colo. River, supra is that the Rabbit Ears Project was specifically named for planning in the 1956 act. The question is whether the inclusion of the Rabbit Ears Project among those having special preference for planning evidenced an intent to appropriate different from what was shown in Four Counties Water v. Colo. River, supra. We conclude that although the interest of the United States in the development of the project might be argued to have become more definite, it still lacked the fixed purpose and intent to effect a diversion of water that would be required to initiate an actual appropriation under Colorado water law. (See discussion in Four Counties Water v. Colo. River, supra.)
This conclusion is compelled by the testimony in the record as to the nature of the planning report to which the act directed the secretary to give priority. It follows: “Q. All right. I will reframe the question. Explain to the Court the nature of planning reports and what its purpose is. The planning reports, I mean, mentioned in Public Law 485.
“A. Planning reports are very little different than the report I mentioned here (referring to surveys that had been done on the projects) except that it is done in greater detail. For instance, in a planning report it is required that land classification be performed in the field on a map drawn to scale, one inch to four hundred *433 feet, whereas maps used in this study here are on a scale of one inch to one thousand feet. All of the studies are carried out in greater detail and to such refinement that the Bureau of Reclamation is willing to go to the Congress and recommend authorization, that they found the projects to be fully feasible and justified and that they recommend this construction.
“Q. Then in the ordinary course of Reclamation procedure then is the completion of the planning report necessary before the project can be authorized?
“A. It is necessary, absolutely necessary.” (Emphasis supplied.)
It is clear from the above that the United States at no time had made a determination to pursue the Rabbit Ears Project with a definite intent to actually go ahead with the same and thereby appropriate the waters of this state. The first such intention manifested by anyone was that of Middle Park and the District when they commenced, on August 18, 1959, the surveys which led to the filings with the state engineer. As of the first claim and the adjudication obtained, both were of the view that that was the proper date upon which the appropriation had been initiated. The idea to claim the earlier date was an afterthought based on an erroneous premise. For the court to have awarded a priority date earlier than August 18, 1959 on the Rabbit Ears Project was erroneous.
THE TROUBLESOME PROJECT
We now turn to a discussion of the controversy in the instant case involving the Troublesome Project and the defendant in error, Lynn A. Matheson. The evidence regarding the Troublesome Project is similar to that in the Rabbit Ears Project. An August 5, 1959 priority date was originally requested by the claimants based on the commencement of survey work it had done preparatory to the filings with the state engineer. Later an amendment of the statement of claim was made and an amended decree was sought with a Sep *434 tember 15, 1950 priority date based on the same kind of work as was done about the same time on the Rabbit Ears Project. Like the Rabbit Ears Project, the Troublesome was named for priority in connection with the completion of planning reports in the 1956 Congressional legislation, 43 USC §620a. The statement of claimants in their answer brief pretty well sums up the evidence in the record on the Troublesome Project:
“The history and development of the Troublesome Project is almost identical to the Rabbit Ears Project.”
Our determination that this project falls squarely within the reasoning and the holding in Four Counties Water v. Colo. River, supra would dispose of the matter except for the fact that Middle Park and the District claim right to the earlier 1950 priority date by default. Apparently no objections or exceptions were filed below to Middle Park’s amended claim on the Troublesome. Matheson, who was adversely affected by Middle Park’s claim thereon as amended, did not protest because of a lack of notice. There is nothing in the record to show to whom or in what manner notice was given of the amended claim, but it appears from a transcript of the record that no notice was given. Counsel for Middle Park stated to the court at one stage of the hearing:
“The court will note that in connection with the Troublesome Project, knowing there would be no formal protest, I have not filed an amended statement of claim but rather have filed amendments of statement of claim, amending certain paragraphs * *
This statement was borne out by the record which shows that Paragraph No. 5 of the original statement of claim was stricken and a new paragraph added giving the date of September 15, 1950, and that paragraph No. 7 of the original claim was stricken and a new paragraph substituted. Counsel, it seems, did not treat the matter as a new claim for priority and did not commence anew, giving the requisite notices to those who would be adversely affected.
*435 We find, however, that Matheson was before the court before the conditional decrees were made a final judgment of the court. Cognizant of the fact that Matheson’s position was identical with Four Counties and that the amended claim of the Troublesome Project was identical with that in the Rabbit Ears Project, and that the arguments in connection therewith were also the same, it did not reopen the matter to hear Matheson’s objection but rather permitted Matheson to join Four Counties in a motion for new trial. When the motion for new trial was denied and the conditional decrees made final by the court, it was fully cognizant of Matheson’s prior claim and of the objections to the Troublesome Project.
In this court, although not here as a plaintiff in error, as he probably should have been, Matheson, nevertheless, is a party to these proceedings. He was designated a defendant in error by Four Counties, even though it now appears that he is not adversely affected by Four Counties’ Claim and is actually in the same position as Four Counties. Matheson, as defendant in error, filed cross-error in his answer brief as to the Troublesome Project, adopting all of Four Counties’ arguments.
We find that there was no appropriation sufficient to satisfy the law by the Bureau of Reclamation in 1950 on the Troublesome Project and that the correct priority date on the Troublesome Project is as originally requested, to-wit: August 5, 1959.
The judgments are reversed and the cause remanded to the trial court with directions to modify the conditional decrees by striking the priority date of September 15, 1950 and substituting therefore the date of November 2, 1959 as to the Rabbit Ears Project, and August 5, 1959 as to the Troublesome Project.
Mr. Justice Hodges and Mr. Justice Kelley not participating.