No. 14,474.

TAUSSIG ET AL. *v.* MOFFAT TUNNEL WATER AND DEVELOPMENT COMPANY.

(106 P. [2d] 363)

Decided June 17, 1940.   Rehearing denied October 14, 1940.

386

Mr. DAN HUGHES, Mr. SILMON SMITH, Mr. FRANK DE-
LANEY, Messrs. MOYNIHAN-HUGHES, Messrs. TUPPER,
SMITH & HOLMES, for plaintiffs in error.

Messrs. BANNISTER & BANNISTER, Mr. THOMAS C.
CHAPIN, Mr. FRANK J. TRELEASE, JR., for defendant in
error.

Mr. ERSKINE R. MYER, Mr. THOMAS A. NIXON, Messrs.
BARTELS, BLOOD & BANCROFT, Mr. FRANK N. BANCROFT,
amici curiae.

Mr. HUME S. WHITE, Mr. WILLIAM J. MEEHAN, Mr.
CARL A. KAISER, amici curiae on petition for rehearing.

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the
court.

THIS controversy involves the validity of certain con-
ditional water decrees entered under the provisions of
section 195, chapter 90, '35 C.S.A., in Water District No.
51. Only such decrees awarded defendant in error are
before us; others entered in the same adjudication are
not questioned. Plaintiffs in error are here seeking re-
versal of the court's action in overruling objections to
the entry of the challenged decrees. We shall herein-
after refer to plaintiffs in errors as objectors and shall
designate defendant in error as the water company.

By leave of court, counsel for the Moffat Tunnel Improvement District, Farmers and Land Owners of Jefferson, Adams and Boulder counties, whose lands are in the Moffat Tunnel Improvement District, and the Northern Colorado Conserviency District were permitted to appear as amici curiae, file briefs and participate in the oral argument. There is no conflict in the evidence and none was introduced by objectors. Seven conditional decrees are involved, namely, those entered for: (1) Hamilton-Cabin Creek Ditch, (2) Extension and Enlargement of Hamilton-Cabin Creek Ditch, (3) Fraser Ditch, (4) Cabin Creek Reservoir, (5) Meadow Creek Reservoir, (6) Ranch Creek Reservoir, and (7) Enlargement of Ranch Creek Reservoir. The water company asserts, and the evidence sustains its assertion, that all of the conditionally decreed rights involved constitute one system, for the collection of water on the Western Slope, to be transported to the Eastern Slope for use, with provision for replacement or compensating water for the benefit of any appropriators on the Western Slope, for water of which they would be deprived. The ditches and reservoirs belonging to the water company, and for which decrees were granted, derive their supply of water from either the Fraser river itself or from tributaries or subtributaries thereof. The Fraser in turn is a tributary of the Colorado river. The water not having been put to any use at the time of the hearing or the rendition of the decrees, only conditional decrees were entered. These decrees do not undertake to assign a specific amount of water to a specific use, but do assign an aggregate amount of water to all uses of each appropriation where more than one exists. The reason given why the statements and conditional decrees did not undertake to allocate the quantity of water to each project under a given decree, is that it was not known at the time of the filing of the statements, or at the time of the hearing, exactly on what location the water would be used, or exactly for what

particular purpose; although it does appear that so far as the water system of the water company is concerned, there is involved a transportation of water through the Moffat tunnel to the Eastern Slope, which is to be utilized in the South Platte basin in Colorado, certain townships therein being designated, and the water to be used on the Western Slope would be along the course of Ranch creek or the Fraser river.

Conditional decrees were granted by our courts prior to the passage of section 195, supra. By the enactment of this section, and of sections 196 and 197 in 1919, the legislature set out the procedure to be followed in such matters. Section 195 provides: "Each claimant for appropriation of water within said water district, whether said appropriation shall have been wholly or partially completed, and though no filing shall have been made in the office of the state engineer, shall appear at said general adjudication proceedings and file his statement of claim and offer proof in support thereof before the district court, or the referee appointed for such purpose, and claims and proofs with respect to partially completed or perfected appropriations shall be presented in the same manner as the claims and proofs for completed and perfected appropriations. The court and referee shall receive and consider all such claims and proofs and if it shall appear that any claimant at said proceedings, or his predecessors in title and claim, has prosecuted his claims of appropriation and the financing and construction of his enterprise with reasonable diligence under all the facts and circumstances surrounding and bearing upon such claim of appropriation, the district court shall enter a decree fixing and determining the priority of right of each such partially completed appropriation as of the date from which such reasonable diligence shall be shown to have been exercised, and fixing the maximum amount of water which such claimant shall be entitled to divert under said priority for the purpose of perfecting his said appropria-

tion, and the court, or the referee, shall further condition such priority of right upon the application of water to beneficial use within a reasonable time after date of the entry of said decree with provision that final decree shall be thereafter entered for such amount of water as shall be shown in a subsequent proceeding to have been applied to beneficial use with such reasonable diligence, and that the amount of water so to be thereafter finally decreed to such appropriation shall in no event be in excess of the maximum amount so fixed in said conditional decree. The court, or the referee, shall give to each such conditional decree the number of its priority like as for a completed appropriation awarded in said adjudication proceedings, but with a letter or suffix following such number to distinguish it as a conditional decree."

■ The primary objections to the decrees presented for our consideration involve a construction of this section 195. Was there any evidence of claims and proofs of partially completed or partially perfected appropriations to satisfy the provisions of the section? The record discloses the following steps taken by the water company: Surveys by the predecessor, as applied to the entire system of the water company, were commenced July 2, 1932; the survey work for all component parts was performed by C. L. Chatfield, a licensed engineer, and other engineers working under his supervision and direction, including the preparation of maps for filing with the state engineer; the contents of these maps were set forth in numerous map exhibits; rights of way and options thereto were acquired, and after a period of two and a half years the water company obtained from the Moffat Tunnel Commission, subject to the rights of the City and County of Denver, a right of way through the Moffat tunnel for carriage of its water, the charge fixed therefor being twenty-five cents per acre-foot, with a minimum of $10,850 per year, to be paid by the water company to the Moffat Tunnel District; consider-

able effort was made to obtain rights of way over the public domain, which so far has not been successful. As for construction work, the record discloses that test holes were drilled at the Ranch Creek Reservoir; that work was performed in the way of clearing timber along the proposed ditch lines; that hill slopes were taken for many miles along the ditch lines; that timber along such lines was classified in respect to lands over which rights of way would have to be obtained, and the survey work was completed in respect to the component parts along the entire system. Approximately $10,000 was spent on this project by the predecessor of the water company, and about the same amount by it up to the time of trial.

Objectors contend that no conditional decree may be entered until the diversion and also the application of water to a beneficial use have been wholly or partially completed. Are there such absolute requirements under section 195, supra, as contended? We think not.

■ Long prior to the enactment of section 195, quoting with approval from *Ophir S. M. Co. v. Carpenter,* 4 Nev. 534, 544, we said: "Although the appropriation is not deemed complete until the actual diversion or use of the water, still if such work be prosecuted with reasonable diligence, the right relates to the time when the first step was taken to secure it." *Sieber v. Frink,* 7 Colo. 148, 153, 2 Pac. 901.

■■ It is clear that section 195 applies only to "claims and proofs with respect to partially completed or perfected appropriations." The requirements are that the claims and proofs, and the financing and construction, be prosecuted with reasonable diligence, "under all the facts and circumstances surrounding and bearing upon such claim of appropriation." All the facts and circumstances surrounding these claims indicate an enterprise of considerable magnitude. Only under the circumstances before us would it be possible for private enterprise to bring water from the Western Slope to the

South Platte basin on the Eastern Slope. Until there is a reasonable assurance culminating in conditional decrees, such as are before us, it would not be possible for any private enterprise to risk such a large amount of capital as is necessary to complete the same. In effect, to require the water company to complete its project before granting it any decree, as objectors contend is necessary, would constitute a denial of the constitutional right to divert unappropriated waters to a beneficial use. We are asked to state the first and last steps necessary to obtain a valid conditional decree. That would require the statement of a legal absolute, based upon varying facts. This we hesitate to do. There might be circumstances under which there should be a partial diversion and the application of water for a beneficial use before the granting of a conditional decree, but this is not such a case. The first step taken in the instant case toward acquiring decrees was the making of a survey of the project, which is not an unusual practice. The conclusion is inescapable that to require an appropriator first to divert and apply water to a beneficial use, before the granting of a conditional decree, as objectors contend is necessary, would thwart any attempt by private parties to initiate and complete any enterprise to bring water to the Eastern Slope. Courts will not require the performance of the impossible. Most of the cases cited by objectors in support of their contention were decided prior to the enactment of section 195, supra. One of such cases upon which they strongly rely is *Fruitland Irrigation Co. v. Kruemling,* 62 Colo. 160, 162 Pac. 161. We think the facts in the instant case come within the rule there established. We note, however, that this as well as all other cases which they cite were controversies concerning priorities wherein it was necessary to weigh the evidence as to the conflicting claims. This is not true in the instant case. In the Fruitland Company-Kruemling case we find this language (pp. 164, 165): "There is no statute in this

state requiring the posting of notice as the inception of the right by relation, but the doctrine is recognized, and our decisions upon the question declare in substance that the right acquired by diversion and application of water to a beneficial use may, with the aid of proper diligence, relate back to the first substantial act of the appropriator for its acquisition, frequently spoken of as the first step. * * * The rule is simple, but it frequently becomes difficult to determine what fact, among those presented in a given case, may be said to be a commencement, a beginning or first step within its contemplation." We held that it was unnecessary, under the facts, to declare, as a general principle of law, that the date of the commencement of a detailed survey is the proper date of a priority to be awarded in such a controversy.

We think that the trial court in the instant case, under the evidence before it, was warranted, in view of the claims and proofs made, to make the findings and enter the conditional decrees, and that the evidence disclosed a partially completed or perfected appropriation, within the meaning of section 195. That the project is feasible appears from the uncontradicted evidence. A definition of a completed appropriation is not helpful. The requirements of section 197 also indicate the legislative intent to be that no showing of diversion and application to a beneficial use is necessary prior to the entry of conditional decrees. Under this section the court retains supervisory jurisdiction of the question of reasonable diligence and the bona fides of petitioners for conditional decrees.

Objectors assert that the claim statements are not in conformity with section 153, chapter 90, '35 C.S.A., in this: They fail to give the location of the headgate, and the number of acres of land lying under the proposed project. The only missing recital is as to the latter specification. There is no merit to this objection. No such requirement is found in section 195. Be-

fore a final decree can be entered, grounds for this objection must be eliminated. Until then, under the facts before us, no such showing is absolutely necessary. Where, as here, only conditional decrees are involved, unless prejudice is shown, such requirement, for all practical purposes, may be waived.

■ It next is contended that an appropriation must be for specific water and for a designated and definite purpose. That is true as to final decrees, but here we are concerned solely with conditional decrees. As already stated, such a requisite under the circumstances, would deny to the water company its right to apply water to a beneficial use. No such statutory requirement exists as to conditional decrees, except the fixing of the maximum amount of water to be diverted, which was done in the instant case. So long as no water has been applied to beneficial use, we are concerned only with an inchoate and an unperfected right. When the water is beneficially applied to a designated use, it becomes a property right and the decree then must take on the elements of definiteness and certainty. Such a situation is not now before us. Some of the problems raised may properly be determined when the question of entering a final decree is before the trial court or when they are specifically presented here for consideration.

Objectors seemingly rely greatly upon the opinion in *Baca Irrigating Ditch Co. v. Model Land and Irrigation Co.*, 80 Colo. 398, 252 Pac. 358, as supporting their contentions here. That opinion is not applicable to the facts before us, nor does it in any way relate to conditional decrees under section 195, supra. There the controversy concerned a determination of priorities. As already stated, no such issue is now before us. There is no evidence here that the granting of the conditional decrees is prejudicial to any existing priorities. For present purposes, we believe the facts to be sufficiently specific both as to water and use. The identical acreage

is not known, as to section; the region is certain as the South Platte basin, and the waters are to be diverted to the Eastern Slope. In that diversion the right of way obtained by the water company from the Moffat Tunnel Commission plays a very important part. One of the objects of its construction was the diversion and transportation of water from Fraser river to the Eastern Slope.

■ It is contended that the evidence must show a definite proposed use. As related to irrigation, domestic and municipal uses, the evidence is sufficient in that respect. Counsel for objectors indicate that we may almost take judicial notice of the need of water for such purposes in the South Platte basin. The same cannot be said as to power, piscatorial or resort uses. There is nothing in the record to indicate a need of water for hydroelectric purposes. Nor do we consider it good practice to predicate a conditional or final decree on uses "for beneficial purposes other than irrigation." That language is too indefinite. Some uses have preferences over others, and should be specifically stated, even in a conditional decree. In that respect the decrees before us should be modified to show that they relate only to irrigation, domestic and municipal uses.

■ The briefs of the water company contain statements indicating that it does not expect to operate as a public carrier, but that its purpose is to furnish water in a private capacity. Not what is said, but what is done, determines whether one is a public carrier. *Davis v. People ex rel.*, 79 Colo. 642, 247 Pac. 801. It is not now necessary to determine this question, nor do we deem it necessary to discuss and determine other questions raised in the briefs.

This cause is remanded, with directions to modify the decrees as indicated, and as so modified they are affirmed.

Mr. Chief Justice Hilliard not participating.

*On Petition for Rehearing*

Mr. Justice Otto Bock.

It is urged by plaintiffs in error on petition for rehearing that the legal effect of our opinion, as applied to the Fraser ditch decree, permits the appropriator to construct a ditch to take water from a point on the stream, convey it through a ditch paralleling the stream for a distance of some twelve miles, return it to the stream without use, and then hold the water under the decree and dispose of it to anyone lower down the stream who might be found to purchase it. Defendant in error disputes this contention. We said in our opinion that some of the problems raised may properly be determined later. This means, of course, at subsequent hearings on this decree and before it is made final by judicial decree, which decree would be subject to review by this court. These problems include a determination of the legal effect of the facts now in evidence and which may hereafter be disclosed by evidence to be adduced in support of the Fraser ditch decree, as to which we express no opinion at this time.

Some disagreement exists between counsel for the parties relative to the modifications of the decrees limiting the same to irrigation, domestic and municipal uses. To remove all doubt, we say that this modification applies to all of the decrees involved.

In the petition for rehearing filed by amici curiae, the matter of the constitutionality of chapter 147, Session Laws of 1919, is raised for the first time. No such question was suggested by plaintiffs in error at the trial, or by the assignment of errors. Under these circumstances we decline to consider it. *McDonald v. People*, 29 Colo. 503, 510, 69 Pac. 703, 705; *Union Pacific*

*R. R. Co. v. Colorado Postal Telegraph-Cable Co.*, 30 Colo. 133, 147, 69 Pac. 564, 568.

The petition for rehearing is denied.