No. 20943.

FOUR COUNTIES WATER USERS ASSOCIATION *v.*
COLORADO RIVER WATER CONSERVATION DISTRICT
AND TOWN OF STEAMBOAT SPRINGS.
(414 P.2d 469)

Decided April 11, 1966.　　Rehearing denied June 6, 1966.

500

IRELAND, STAPLETON, PRYOR & HOLMES, D. MONTE PAS-COE, for plaintiff in error.

FRANK DELANEY, for defendant in error Colorado River Water Conservation District.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THE parties in this writ of error will be referred to as follows: Plaintiff in error — Four Counties Water Users Association — as Four Counties or claimant; defendants in error Colorado River Water Conservation District and the Town of Steamboat Springs as objectors.

Four Counties expressed a desire and intention to put to beneficial use waters in Routt County and in Grand County to be diverted, through a system of exchange, to counties east of the divide. Claimant filed in the district court in each of the counties its Statement of Claims, asserting that appropriations had been made and due diligence demonstrated commencing on and continuously from June 2, 1958. Claimant prayed for the entry by the court of a conditional decree fixing and determining the priority rights of the appropriation of the water claims and establishing the date from which reasonable diligence had been shown to have been exercised and fixing the maximum amount of water which the claimant shall be entitled to divert under the aforementioned priority.

The claims in both of the counties were interrelated and constituted an integral collection storage and diver-

sion system. Both counties are within the Fourteenth Judicial District, and it was therefore stipulated by the parties that the testimony introduced at the hearing in the district court of Grand County and the testimony given in the adjudication proceedings in Routt County would be considered together by the court.

Identical orders, denominated "Findings and Conclusions," were entered by the court in each of the cases denying claimants their request for a conditional decree. To those orders writ of error issued in this case and in the companion case Supreme Court No. 20942. This opinion must be read in conjunction with the opinion in that case announced this date, as both cases were consolidated for oral argument; and it was agreed that the decision in this case is dispositive of questions raised in the other.

By its Statement of Claims and the evidence presented at the hearings in support thereof, Four Counties seeks to appropriate water from Walton and Fish Creeks in Water District 58 and on Muddy Creek and its tributary in Water District 50 — all in the Yampa River Water shed. The plans include storage for these waters in a reservoir on Rabbit Ears Pass. From there, at the first stage of the proceeding, a portion of the water collected would be delivered to Grizzly Creek, a tributary of the North Platte River arising in the northwest corner of North Park. By exchange an equal amount of water would be taken from the Illinois and Michigan Rivers, arising in the northeast corner of North Park and delivered by ditch to Willow Creek Pass. The remainder of the water is contemplated to be transported to Willow Creek Pass by pipe line or channel, and then to Granby Reservoir by use of the Colorado Big Thompson Conservation facilities on Willow Creek. The waters would then be transported via the Adams Tunnel to the Eastern Slope for water users in the counties of Adams, Boulder, Weld and Larimer.

Absent the requisite consent and agreement from the

federal government for the use of the Adams Tunnel, the plans call for an extension of the Fourth of July Mine Tunnel on Arapahoe Pass and transportation and storage on the Eastern Slope.

Objections were filed in Grand County in the adjudication proceedings there by the Middle Park Water Conservancy District in which the Colorado River Water Conservation District joined. The Town of Steamboat Springs and the Colorado River Water Conservation District joined in filing the protest and objections in the adjudication proceedings in Routt County. The protests filed by all of the objectors are identical, and the court, in denying the conditional decree in both proceedings, adopted in toto all of the points and all of the arguments raised by the objectors to the granting of the decree.

In entering its order, the court first announced a general observation which formed the background for and provided the dominant theme in more specific findings. The court said:

"Claimant at the outset of its reply briefs offers the idea that 'claimant wants to first emphasize * * * that entry of a conditional decree is mandatory upon showing an appropriation has been initiated and has been pursued with diligence.' This has the merit of brevity but its sweeping consequences if it is adopted should have some place in the consideration. In this constricted framework, need and necessity for and amount of the water are irrelevant. The claimant need only claim. It imports that a claimant is empowered to segregate and place beyond the reach of others who may be in dire need of the water, an amount and volume limited only by the notions of the claimant and for an indefinite period, whether the claimant be a speculator, an entrepreneur or a self-styled 'water users association'. That the claim here is completely speculative is clear from the record. Neither Mr. Elliott nor any of the other members of the claimant corporation intend to 'use' so much as a pint of water. The sole intention is to hold

and control the water and sell it to various areas and municipalities none of whom are obliged to purchase any part of it and whether any of them will meet the claimant's terms and requirements when and if they need and desire the water is unknown."

The court recited the details of the project as shown by various maps, plans and filings in the office of the State Engineer. (They are not necessary for purposes of this opinion to be recited in detail here.) The court then found:

"The scheme variously referred to as the Four Counties Project and as the Rabbit Ears Project, as a whole, consists of many separate units and is not one project." Other findings — eight in number — were as follows:

"2. The claimant has not arrived at any definite intention to divert or appropriate water for any given beneficial purpose or use. The claimant does assert that the water mentioned in the claim and which it proposes to appropriate is for municipal purposes, but whether such water is needed or will be used by the municipalities or organizations for which the claim is made is purely speculative and conjectural.

"3. The details of the structures necessary to divert or appropriate water have not been formulated or crystalized to the extent necessary to constitute the first part of an appropriation; namely, a definite intention to divert a maximum amount of water or to determine how such water is to be diverted.

"4. To the extent that the claimant had any plan or intention to appropriate water, such intention was indicated by the reconnaissance surveys, which, even up to the time of the hearing herein, were being radically changed and modified so as to constitute an abandonment of the earlier tentative plans, and successive changes to other structures and features were being made which constituted a material departure from the earlier proposals.

"5. That the claim of said Association is speculative,

not feasible, fantastic, and without reasonable promise of accomplishment.

"6. Such a claim of appropriation if merged into a conditional decree will recognize expressly or by necessary implication as due diligence in the continuance of said decree reconnaissance surveys and exploratory work of the same kind as said claimant relies on as the steps necessary to initiate and constitute an appropration. The result would be earmarking water for speculative purposes. As to other bona fide appropriators on the streams, the right to appropriate water would be so clouded that the further appropriation of the waters of the streams involved would be made impossible.

"7. The claims of the said Four Counties Association are insufficient and should be denied for the following reasons:

"(a) There is no sufficient evidence to show that water exported to the tributaries of the North Platte River will not be used in whole or in part outside of the State of Colorado. The evidence does not show that after said water is diverted into the tributaries of the North Platte River that the same will be so controlled that said water, or a corresponding amount of water, may be used in the State of Colorado.

"(b) The evidence is insufficient to show that the claimant can acquire the right to divert and utilize water through the Adams Tunnel, or by means of other facilities of the Colorado-Big Thompson Project.

"(c) The undisputed evidence shows that the cost of water to be conveyed through the proposed work and project, if otherwise physically or legally possible, would be so expensive as to be impossible of accomplishment.

"(d) The claimant has shown no plan or intention whereby Highway No. 40, which now extends through the proposed site of Rabbit Ears Reservoir, is to be or can be re-routed.

"(e) No definite intentions or plans have been formulated as to the manner in which any water which the

claimant proposes to export from the tributaries of the North Platte to the tributaries of the Colorado River Basin or from any other source to Willow Creek, a tributary of the Colorado River, is to be transported or conveyed to the Granby Reservoir.

"8. It appears that the claims in Water District No. 50 are limited to two headgates on Muddy Creek and that the Rabbit Ears Reservoir is an on-stream reservoir on Muddy Creek itself. Except for this the claims are in District No. 58. There are also claims, said to be a part of the projects of the claimant, or one or more of them, in Water District No. 51, but there is nothing now before the Court for adjudication in Water District No. 51.

"9. Subject to the foregoing and for whatever purpose it may serve, and to conform to the possible implications contained in the Metropolitan case the Court finds that claimant has been diligent since January 26th, 1959. This is on the assumption that claimant has initiated a valid appropriation. If so that is the date of its priority."

To the findings of the court, Four Counties filed detailed and specific objections; and upon the overruling of those objections and the entry of the judgment denying the conditional decree, they prosecuted this writ of error.

The findings of the trial court are challenged specifically, but each of them need not be analyzed in this opinion. In summary, it is asserted that they are either not supported by the evidence or are contrary to undisputed evidence. It is also argued that the court refused to apply the law announced by this court in *Metropolitan Suburban Water Users Association, et al. v. Colorado River Water Conservation District, et al.,* 148 Colo. 173, 365 P.2d 273, to the facts in this case. Here, as in that case, is involved the application of C.R.S. 1963, 148-10-6 to facts clearly similar. The section reads:

"Proof of Claim—decree.—(1) Each claimant for ap-

propriation of water within said water district, whether said appropriation shall have been wholly or partially completed, and though no filing shall have been made in the office of the state engineer, shall appear at said general adjudication proceedings and file his statement of claim and offer proof in support thereof before the district court, or the referee appointed for such purpose, and claims and proofs with respect to partially completed or perfected appropriations shall be presented in the same manner as the claims and proofs for completed and perfected appropriations.

"(2) The court and referee shall receive and consider all such claims and proofs and if it shall appear that any claimant at said proceedings, or his predecessors in title and claim, has prosecuted his claims and appropriation and the financing and construction of his enterprise with reasonable diligence under all the facts and circumstances surrounding and bearing upon such claim of appropriation, the district court shall enter a decree fixing and determining the priority of right of each such partially completed appropriation as of the date from which such reasonable diligence shall be shown to have been exercised, and fixing the maximum amount of water which such claimant shall be entitled to divert under said priority for the purpose of perfecting his said appropriation. The court, or the referee, shall further condition such priority of right upon the application of water to beneficial use within a reasonable time after date of the entry of said decree with provision that final decree shall be thereafter entered for such amount of water as shall be shown in a subsequent proceeding to have been applied to beneficial use with reasonable diligence, and that the amount of water so to be thereafter finally decreed to such appropriation shall in no event be in excess of the maximum amount so fixed in said conditional decree.

"(3) The court, or the referee, shall give to each such conditional decree the number of its priority like as for

a completed appropriation awarded in said adjudication proceedings, but with a letter or suffix following such number to distinguish it as a conditional decree."

First Question To Be Determined:

*DID FOUR COUNTIES PRESENT SUFFICIENT EVIDENCE TO BRING IT WITHIN THE REQUIREMENTS OF THE "CONDITIONAL DECREE" STATUTE ABOVE QUOTED?*

█ This question is answered in the affirmative.

The trial court characterizes this statute as "replete with ambiguities and uncertainties" and further observed that "until these have been resolved by authoritative judicial interpretation the supported control of the court over the conditional decree (itself an accomplished fact) [sic] is very tenuous."

The statute for application for a conditional decree is not ambiguous. And when read with C.R.S. 1963, 148-10-8, as we said in *Metropolitan Suburban Water Users Association, supra,* the latter section provides "* * * ample safeguards" for the future. It reads in pertinent part as follows:

"The day of the opening of the first term of said district court in every even numbered year after the year of entry of said decree in said general adjudication proceeding shall be adjudication day for the hearing of further proof in support of any appropriation so granted conditional decree in said general adjudication and for the purpose of permitting such claimant to show reasonable diligence in the prosecution of the completion of said appropriation, * * *. At the conclusion of such hearings * * * *the district court shall cancel in whole or in part the conditional decrees of all claims for appropriation where, under all the facts and circumstances concerning each enterprise, reasonable diligence or progress has not been shown in the financing, construction and completion in whole or in part of each of the several enterprises theretofore granted such conditional decree; and by order shall continue until the next succeeding*

*adjudication day all conditional decrees or portions thereof not so canceled with respect to which appropriations in whole or in part reasonable diligence and progress has been shown, and shall enter final decrees for all conditional appropriations or make final any portion thereof where beneficial use of water has been made since the last hearing upon such claim, but in no event to exceed the amount so applied to beneficial use nor the maximum amount fixed by the conditional decree in each instance."* (Emphasis supplied.)

 Applying section 148-10-6, it is clear that in proceedings pertaining to an award of a conditional decree for water, only two questions are properly before the court, and their determination will dictate whether a conditional decree must follow. One is whether an appropriation has been made by the claimant and as of what date. The second is whether the claimant has prosecuted his claim of appropriation and the planning, financing and construction of his enterprise with reasonable diligence. In the case at bar claimant is in the anomalous position of having the court find that there was due diligence from the date of January 26, 1959 (although the correctness of that date is challenged) but that there was no appropriation. Left unanswered by the court was what Four Counties had been duly diligent about.

Second Question To Be Determined:
*WAS AN APPROPRIATION INITIATED BY FOUR COUNTIES?*

 This question is answered in the affirmative.

An appropriation of water for beneficial use thereof is effected as of the time the "first step" is taken to secure it. *Sieber v. Frink,* 7 Colo. 148, 2 Pac. 901. We have held that what constitutes the "first step" is not the same in every proposed diversion because the facts must be taken into consideration in each case on an *ad hoc* basis; although projects of the scope of Four Counties have been before this court in previous years.

For example, in *Taussig v. Moffat Tunnel Co.*, 106 Colo. 384, 106 P.2d 363, we affirmed the granting of conditional decrees on the basis that appropriations were effected by the conducting of surveys in pursuance of a plan to bring water from the Western Slope to the South Platte Basin on the East Slope. In that case we said:

"* * * All the facts and circumstances surrounding these claims indicate an enterprise of considerable magnitude. Only under the circumstances before us would it be possible for private enterprise to bring water from the Western Slope to the South Platte basin on the Eastern Slope. Until there is a reasonable assurance culminating in conditional decrees, such as are before us, it would not be possible for any private enterprise to risk such a large amount of capital as is necessary to complete the same. * * * *The first step taken in the instant case toward acquiring decrees was the making of a survey of the project,* which is not an unusual practice. * * *" (Emphasis supplied.)

Thus it is clear that Four Counties was entitled to an appropriation date as of the time of its field survey. The trial court characterized these as merely reconnaissance surveys and being preliminary in nature. However, we find from the record that they were, in fact, the basis for filing of maps and statements with the State Engineer: the first within three months time — in September — and the others the following January, a total of six months for surveys and detailed maps. A survey of such depth as to be the basis for detailed maps is one that we have said can be used as the date of the initiation of the appropriation. As we said in *Metropolitan Suburban Water Users Association, supra:*

"The District commenced work on its Red Cliff Project by survey on August 10, 1956, and on October 4, 1956, filed with the state engineer its map and statement in conformity with the provisions of C.R.S. '53, 147-4-1.

"Counsel for the District vigorously and persuasively

argue that, having strictly complied with the Map and Statement Act, C.R.S. '53, 147-4-1, it is entitled to the benefit of the doctrine of relation of its priority date back to the date it commenced its survey. *We subscribe to this contention providing there has been due diligence as required* by C.R.S. '53, 147-10-8, *supra*. (Now C.R.S. 1963, 148-10-8.)" (Emphasis supplied.)

■ This evidence of survey work commenced in June, 1958, followed by preparation and filing of maps and statements as early as September, 1958, also constitutes due diligence since the initial survey. It was error for the court to ignore this earlier six-month period in its finding that due diligence had been shown only since January 26, 1959.

Third Question To Be Determined:

*DOES THE EVIDENCE SUPPORT THE COURT FINDING THAT THERE WAS NO NEED FOR THE WATER; THAT THE SHOWING OF NEED WAS AT MOST SPECULATIVE, AND THAT THE PROJECT WAS "NOT FEASIBLE, WAS FANTASTIC AND WITHOUT REASONABLE PROMISE OF ACCOMPLISHMENT."?*

■ This question is answered in the negative.

The finding of the trial court in this regard was, at most, only an opinion and not a finding of fact. The answers to most of the questions in the mind of the trial court lie in the future. The court applied yardsticks outside those set forth in the *Metropolitan* case, and, if the trial court's reasoning was to apply, there would be required certainty about the future when no forthright man could make such a judgment. The court, in effect, required proof of future needs for water with certainty at the time of the application for the conditional decree; and further required that no changes be made in the project once commenced; and that detailed planning for every phase of the multi-million dollar project be completed. The court, in effect, required proof with certainty that the project would be

constructed, and that the construction would be financially feasible. As we said in *Metropolitan, supra:*

"Similar views and fears prevailed with reference to the Big Thompson, Moffat Tunnel, Roberts Tunnel and other major projects — to many if not to most people, these projects appeared to be the dreams of visionaries; today they are beneficent realities. The trial court had no right to substitute its opinion as to the course of future events, for that of those charged with the duty of supplying adequate water for municipalities and other public bodies, who have made careful studies of the questions and problems presented and have in good faith put their *vision, work, money and energies* into a program by which they seek to put the public waters of the state to beneficial use. If they have miscalculated and fail, the loss is theirs — if they succeed, it will be for the eternal benefit of the peoples of the state of Colorado."

We further commented on similar findings of the trial court in the *Metropolitan* case as follows:

"Passage of time and events occurring prior to granting any final decree will produce definite answers to the questions upon which the trial judge made findings based on speculative and unsupporting evidence, and used as the basis for denying any decrees. Only time can definitely determine whether all, a part, or none of the claimed water is needed. Time and work will demonstrate whether the engineering and construction plans are feasible and can be successfully completed. Time will tell whether finances can be made available. If these prerequisites to a final decree are not brought to pass within a reasonable time, the conditional decrees must be cancelled or modified as only partially established.

"No final decree can be awarded until the water is put to beneficial use, and then only for such amount as is put to such use.

"It is inconceivable that any development of the mag-

nitude of that proposed by the Association * * * can be completed without the aid of the conditional decree statutes. Assurance of a decree on completion of a project is a prerequisite to complete financing, engineering and construction. * * *"

The evidence at the hearing was about as certain as it was possible to present. It was shown that $245,602.40 had been expended up to the date of the hearing; most of the rights of way had been obtained; 2.25 miles of the ditch for which claim was made had been constructed, including measuring of flumes and diversion dams; construction of 3.9 miles of ditch in the southeast corner of North Park was completed, concrete indications of a present and completed intention to take. Surveys were made to determine the future water needs of persons living in the Four Counties area, showing that on projected population growth 395,000 persons would be living within the proposed Four Counties to be served by the year 1970 and 740,000 by 1985. It was estimated that 1,145,000 people would be in the area by the year 2000. This would create demands for additional water of from 35,000 to 45,000 acre feet by the year 1970; from 85,000 to 146,000 acre feet by the year 1985; and between 156,000 and 268,000 acre feet by the year 2000. In view of the fact that waters from the natural streams in the area are virtually 100% appropriated, the only source of water available would be from a trans-mountain diversion project such as here presented.

█ Aware of the problems presented in projects of such magnitude and that their solution is not always resolved in detail, either from the outset or at the time of the hearing for a conditional decree, we further said in the *Metropolitan* case:

"* * * The conditional decree statute is designed to meet the very problems confronting the Association, and it should be construed and applied so as to aid and encourage, rather than to block development and early use of the water resources of the state."

Fourth Question To Be Determined:

*DID THE COURT ERR IN FINDING AND CONCLUD-
ING THAT THERE WERE CHANGES IN THE PLAN
OF SUCH NATURE AS TO INDICATE NO FIXED
INTENTION TO TAKE OR IF THERE WAS SUCH
AN INTENTION IT HAD BEEN ABANDONED?*

This question is answered in the affirmative.

There is nothing in the evidence that would support a finding of abandonment. Of the changes referred to, all but one involved amendments to the storage and transmission system first envisioned by Four Counties. A change of diversion is not involved. Evidence such as shown herein could not form the basis for abandonment of claimant's intention to take water from a particular source. If a contemplated or actual diversion of water is not altered at its source, the doctrine of relation back should apply.

Apparently relying on some of the language in *City and County of Denver v. Northern Colorado Conservancy District,* 130 Colo. 375, 276 P.2d 992, the court also concluded that the abandonment of headgates on ditch No. 1 and an increase in the take from headgates on ditch No. 3 constituted such a major change in plans that the initiation of the appropriation could not relate back to the first step taken, *i.e.,* the survey. The court thus advanced this as another reason for adopting the January 26, 1959 date as the first date from which "due diligence had been shown."

The alterations in the plans on subsequent maps filed did not change the source from which the water was to be taken nor the amount claimed. It was effected in such a short period of time as to be not a change at all. In fact, the evidence was that the only revision in the maps and statements originally filed with the State Engineer was made because further engineering studies showed that it was more efficient to transport the waters for which claim was made by gravity to a single reservoir than to transport the waters to North Park at two

places. The revision claimed no new water and changed no point of diversion. It does, however, result in several points of diversion not being used. The differences actually result in a more efficient, economical plan; and rather than showing no fixed intention to take, they demonstrate continuous engineering studies with a purposeful, deliberate and diligent effort to take all steps necessary to divert the water and apply it to beneficial use. On the evidence here presented, what was said by Mr. Justice Moore in his dissenting opinion in *Denver v. Northern Colorado District, supra,* applies to these facts and not the language in the majority opinion. The dissent discussed the following ruling:

"As will be seen \* \* \* there are some changes which can be made in the plan of a water development which will not constitute a relinquishment of the project. One criterion for determination of this problem was used by the United States Supreme Court in the case of *Wyoming v. Colorado,* 259 U.S. 419, where the changes planned had to do with the determination of 'whether' the would-be appropriator would proceed at all with the diversion project. Such changes are to be distinguished from those which go rather to selection of the most economical or effective means to be employed for the accomplishment of a diversion and use of water, concerning which there already is a fixed and definite intention to take. Once the decision has been made to proceed with the project, continuing investigations and changes are simply evidence of diligence and endeavor to accomplish the greatest good at a minimum of cost to the public, not abandonment of the project."

Fifth Question To Be Determined:

*IS THE ECONOMIC FEASIBILITY OF COMPLETING THE PROJECT A TEST TO BE APPLIED UPON APPLICATION FOR A CONDITIONAL DECREE?*

This question is answered in the negative.

As has been indicated earlier, the purpose of the conditional decree statute is to determine if an appropria-

tion has been initiated. The requirement that the parties appear before the court under C.R.S. 1963, 148-10-8, to report on the diligence pursued and the additional steps taken is designed to enable the court to check on whether evidence of insufficient finances or the economic non-feasibility of the project appear in more concrete form.

One cannot reasonably expect a water diversion plan of this size to be without problems and difficulties. Claimant is under an obligation to exert reasonable diligence to overcome these obstacles or lose his claim. At each of the statutory reviews of the prosecution of the claim, there will have to be presented progress reports of financial plans and sufficient work to prove that the project can and will be completed. As we said again in the *Metropolitan* case, "If they have miscalculated and fail, the loss is theirs — if they succeed, it will be for the eternal benefit of the peoples of the state of Colorado."

The judgment is reversed and the cause remanded with directions to enter a conditional decree in accordance with the claim filed and prayed for.