**ROCKY MOUNTAIN POWER COMPANY, Applicant-Appellant,**

v.

**COLORADO RIVER WATER CONSERVATION DISTRICT; Denver Water Department, Objectors-Appellees.**

No. 81SA327.

Supreme Court of Colorado,
En Banc.

June 7, 1982.

---

Gorsuch, Kirgis, Campbell, Walker & Grover, Leonard M. Campbell, Philip E. Riedesel, Janet N. Harris, Vickie J. Fowler, Charles F. Brannan, Denver, for applicant-appellant.

Donald H. Hamburg, Gen. Counsel, Colorado River Water Conservation Dist., Delaney & Balcomb, P. C., Kenneth Balcomb, Scott Balcomb, Pamela H. Prescott, Glenwood Springs, for objector-appellee, Colorado River Water Conservation Dist.

Michael L. Walker, Hendry C. Teigen, Anne R. McGee, Denver, for objector-appellee, Denver Water Dept.

ERICKSON, Justice.

This is an appeal from a decision of the District Court in and for Water Division No. 5 (water court) denying the applications of appellant, Rocky Mountain Power Co. (Rocky Mountain), for conditional water rights and water storage rights in Grand County and Summit County, Colorado. We affirm.

On July 6, 1970, Rocky Mountain filed four applications for conditional water rights and water storage rights pursuant to the Water Right Determination and Adjudication Act of 1969, sections 37–92–101 et seq., C.R.S.1973 (Act). The applications proposed construction of a major water diversion project designed to transport large quantities of water from the tributaries of the upper portion of the Colorado River to the Colorado Big Thompson Project and the Moffat Tunnel, and then to ultimate users on the eastern slope of the front range in Colorado. Rocky Mountain's applications sought conditional decrees to divert and store, in priority, water from the Blue River, the Williams Fork River, and Keyser Creek.[1] In addition, Rocky Mountain proposed a water exchange project which would enable it to divert water from the above sources out of priority when replaced by an equivalent amount from Rocky Mountain's conditionally decreed water rights granted for use in connection with a hydroelectric project on Sweetwater Creek.[2] Under the exchange proposal, a certain amount of water to be appropriated under the applications would also be used to replace water used in the Sweetwater Hydroelectric Project which is lost during transportation. Other than those portions of water intended by Rocky Mountain to be used as replacement water in connection with the Sweetwater Hydroelectric Project, none of the water for which decrees were sought in this case was to be used on land or facilities owned or operated by Rocky Mountain.

---

1. Rocky Mountain proposed a dual system of structures which would deliver 500 cubic feet per second (c.f.s.) of water to the Colorado Big Thompson Project via the "Blue River-Williams Fork-Willow Creek Conduit" and 500 c.f.s. of water to the Moffat Tunnel via the "Horseshoe-Moffat Conduit." Certain reservoirs and pipelines are common to both systems; thus, water diverted and transported by either system could be transferred to the other.

2. Sweetwater Creek is a tributary of and joins the Colorado River at a point downstream from where the tributaries involved in this case enter the Colorado River. A case involving Rocky Mountain's conditionally decreed Sweetwater Hydroelectric Project is presently pending before this Court. See Dry Creek Land and Livestock Co. v. Gulf Oil Corp. (S.Ct. No. 80SA400, oral argument heard on March 27, 1981). A decision in Dry Creek has been deferred at the request of the parties pending completion of settlement negotiations.

The applications set forth the following statement with respect to the proposed use of the water on the eastern slope:

> "The waters will be used by cities, towns and other types of users in Northern Colorado, and return flows will be used on irrigated land in Northern Colorado. Initially, first use of some of the water will be for irrigation and will be so used until such time as the growing cities require the water for municipal use. The waters to be derived from the diversion will be used for the following purposes: municipal, industrial, agricultural and other beneficial purposes, including power generation, both by hydraulic and steam power production, and for cooling purposes."

In each of the four applications, Rocky Mountain claimed an appropriation date of January 24, 1970, which marks the date that a survey on the project was commenced. The appellee, Colorado River Water Conservation District (District), opposed the applications on the grounds that there was no ascertainable proposed place of use of the waters to be diverted. Also opposing one or more of Rocky Mountain's claims were the United States of America, the City and County of Denver, which alleged that the applications were not indicative of a serious intention to appropriate water, and the Central Colorado Water Conservancy District.

On May 11, 1972, the water court appointed a special master pursuant to C.R. C.P. 53.[3] A hearing before the master was held on February 13 and 14, 1973, at which time evidence in support of and in opposition to the applications was presented. The master concluded that, on January 24, 1970, Rocky Mountain possessed the requisite intent to appropriate the claimed water and demonstrated that intent by open, physical work on the land. Accordingly, in its report to the water court on December 11, 1978, the master recommended entry of a decree granting the applications of Rocky Mountain for conditional water rights and water storage rights with an appropriation date of January 24, 1970.

On December 15, 1978, the District filed a "Protest and Objection to the Report of the Master-Referee Concerning the Claims of the Rocky Mountain Power Company," which objected to the master's conclusion that Rocky Mountain had shown the requisite intent to appropriate the claimed water. Thereafter, on February 22, 1980, prior to any hearing or decision by the water court on the objection, the District filed a "Motion to Set Aside Master-Referee's Report and to Enter Judgment Denying the Claims," which again challenged the type and level of intent required by the master for a conditional water decree. In the motion to set aside, the District also pointed out that our decision in *Colorado River Water Conservation District v. Vidler Tunnel Water Co.*, 197 Colo. 413, 594 P.2d 566 (1979) (*Vidler*), was controlling in this case and clarified the law relating to claims for conditional water decrees such as those advanced by Rocky Mountain.

At a hearing on April 18, 1980, the water court ruled that it would consider the motion to set aside as an amendment to or supplementation of the District's previous objection.[4] Thereafter, relying on *Vidler*, the water court entered an order on April

---

**3.** C.R.C.P. 53(c) sets forth the powers of a master:

> "The order of reference to the master may specify or limit his powers and may direct him to report only upon particular issues, or to do or perform particular acts or to receive and report evidence only and may fix the time and place for beginning and closing the hearings and for the filing of the master's report. Subject to the specifications and limitations stated in the order, the master has and shall exercise the power to regulate all proceedings in every hearing before him and

to do all acts and take all measures necessary or proper for the efficient performance of his duties under the order. . . ."

**4.** The record does not reflect any attempt by Rocky Mountain to enhance its position during the pendency of this litigation. At the hearing, one year after our decision in *Vidler* was announced, arguments of counsel were heard, but Rocky Mountain, in light of *Vidler*, presented no additional evidence regarding the purported beneficial users of the claimed water to support its applications for conditional decrees.

25, 1980, denying the conditional water decrees sought by Rocky Mountain. By an order dated June 3, 1981, the water court denied Rocky Mountain's motion for a new trial, and Rocky Mountain appealed. For the reasons expressed in this opinion, we affirm the decision of the water court.

## I.

 As a preliminary matter, we reject Rocky Mountain's contention that the water court erred in considering the District's motion to set aside as an amendment to or supplementation of the District's previous objection filed on December 15, 1978. Rocky Mountain argues that since the motion to set aside was, in effect, a written objection to the master's report, it should have been dismissed as it was not timely filed under the provisions of C.R.C.P. 53(e)(2) and 6(b). We do not agree.

Nowhere in the Act or in the Colorado Rules of Civil Procedure is there any prohibition against filing an amendment to a timely filed objection before a hearing on that objection has occurred. From an examination of the two documents filed by the District in response to the master's report, it is clear that they both challenged the master's conclusion that Rocky Mountain had shown the requisite intent to initiate an appropriation of water relating back to January 24, 1970. In its motion to set aside, the District merely added our recent decision in *Vidler* to support its challenge.

Further, Rocky Mountain's argument that the water court would have found in its favor had it not considered the District's motion to set aside is without merit. Even in the absence of the supplemental motion, the water court was bound to consider the applicable law in this State regarding conditional water decrees as set forth in *Vidler*, and it was within the court's discretion to reverse the master's ruling if it deemed it to be contrary to applicable law. *See* section 37–92–304(5), C.R.S.1973. Accordingly, under the circumstances, the water court

did not err in considering the District's motion to set aside as an amendment to or supplementation of its previous objection to the master's report.

## II.

 A conditional water right is the "right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." Section 37–92–103(6), C.R.S.1973. The purpose of a conditional water decree has always been to allow an ultimate appropriation of water to relate back to the time of the "first step" toward that appropriation. *See* section 37–92–305(1), C.R.S.1973; *Colorado River Water Conservation District v. Vidler Tunnel Water Co.*, 197 Colo. 413, 594 P.2d 566 (1979); *Four Counties Water Users Association v. Colorado River Water Conservation District*, 159 Colo. 499, 414 P.2d 469 (1966).

The "first step" consists of two prongs: The formation of an intent to appropriate a definite quantity of water for a beneficial use,[5] and an overt manifestation of that intent through physical acts sufficient to constitute notice to third parties. *See, e.g., Colorado River Water Conservation District v. Vidler Tunnel Water Co., supra; Bunger v. Uncompahgre Valley Water Users Association*, 192 Colo. 159, 557 P.2d 389 (1976); *Central Colorado Water Conservancy District v. Denver*, 189 Colo. 272, 539 P.2d 1270 (1975); *Four Counties Water Users Association v. Colorado River Water Conservation District, supra; Fruitland Irrigation Co. v. Kruemling*, 62 Colo. 160, 162 P. 161 (1916). To determine whether an appropriation has been initiated, the facts of each case must be considered on an *ad hoc* basis in light of the circumstances and facts before the water court. *Harvey Land and Cattle Co. v. Southeastern Colorado Water Conservancy District*, Colo., 631 P.2d 1111 (1981); *Colorado River Water Conservation District v. Vidler Tunnel Water Co., supra; Central*

---

**5.** A beneficial use is "the use of that amount of water that is reasonable and appropriate under reasonably efficient practices to accomplish without waste the purpose for which the appropriation is lawfully made. . . ." section 37–92–103(4), C.R.S.1973.

*Colorado Water Conservancy District v. Denver, supra; Elk-Rifle Water Co. v. Templeton,* 173 Colo. 438, 484 P.2d 1211 (1971). A guiding principle in applying the two elements of the "first step" is whether the applicant seeks to "invoke the benefit of remote contingencies to unduly extend the doctrine of relation [back]," *Fruitland Irrigation Co. v. Kruemling, supra,* and the burden of proving these elements is upon the applicant for the conditional water right. Section 37–92–304(3), C.R.S.1973.

The District does not contest the master's finding that Rocky Mountain satisfied the second prong of the "first step" requirement on January 24, 1970, when field survey work on both the Blue River and Keyser Creek was commenced. Indeed, that element was not a basis for the water court's decree and is not now at issue here. The District urges, however, that Rocky Mountain failed to show the first prong of the "first step" requirement, or the requisite intent to appropriate and, therefore, the water court properly denied the conditional decree. In its order, the water court made the following findings of fact:

"There is no evidence that the applicant intends to use any quantified portion of the water it seeks to divert on land it owns or leases or in facilities it owns or operates.

"Except for an undefined amount, the applicant intends to sell all of the water it seeks to divert to the ultimate users.

"The applicant has entered into discussions with several prospective ultimate purchasers and users of the water the applicant seeks to divert.

"The applicant has no firm contractual commitment from any of the prospective purchasers and users of the water it seeks to divert."

Relying on our decision in *Vidler,* the water court concluded that since there was no evidence that Rocky Mountain itself intended to put to a beneficial use any quantified amount of water, or that Rocky Mountain had obtained any contractual commitments from any prospective beneficial users of the water, the applications must be denied.

Rocky Mountain contends that there was no requirement for it to demonstrate the need for water with certainty at the time of its application for a conditional decree and that, on January 24, 1970, it therefore possessed the requisite intent to appropriate. In its view, at the hearing before the master in February 1973 and when the master filed his report in December 1978, *i.e.,* prior to *Vidler,* it was not required that an appropriation be for a specified amount of water or for a definite purpose in order to obtain a conditional decree. We disagree. Far from overruling prior case law, our decision in *Vidler* expressly relied upon prior holdings of this Court to support the conclusion that a claimant of a conditional water right must substantiate a need for the claimed water by showing, at the least, a contractual or an agency relationship with those who are to put the water to a beneficial use. In *Vidler,* we reaffirmed our longstanding view that conditional decrees will not be granted to those who cannot show more than a speculative or conjectural future beneficial use:

"Our constitution guarantees a right to appropriate, not a right to speculate. The right to appropriate is for *use,* not merely for profit. As we read our constitution and statutes, they give no one the right to preempt the development potential of water for the anticipated future use of *others* not in privity of contract, or in any agency relationship, with the developer regarding that use. To recognize conditional decrees grounded on no interest beyond a desire to obtain water for sale would—as a practical matter—discourage those who have need and use for the water from developing it. Moreover, such a rule would encourage those with vast monetary resources to monopolize, for personal profit rather than for beneficial use, whatever unappropriated water remains. Twenty-five years ago this Court emphatically rejected the 'claim that mere speculators, not intending themselves to appropriate and carry water to a beneficial use or representing

others so intending, can by survey, plat, and token construction compel subsequent bona fide appropriators to pay them tribute by purchasing their claims in order to acquire a right guaranteed them by our Constitution.' *Denver v. Northern Colorado Water Dist.*, 130 Colo. 375, 408, 276 P.2d 992, 1009 (1954)." (Emphasis in original.) 197 Colo. at 417, 594 P.2d at 568–69.

*See also Southeastern Colorado Water Conservancy District v. Huston*, 197 Colo. 365, 593 P.2d 1347 (1979); *Bunger v. Uncompahgre Valley Water Users Association, supra*. Since our decision in *Denver v. Northern Colorado Water Conservancy District, supra*, we have continually upheld the principle that conditional water rights will not be granted where the applicant merely speculates that unknown third parties will use the claimed water, in the future, for beneficial purposes.[6]

■ *Vidler* is also consistent with the provisions in the Act which require that an application for a conditional water right contain a statement of "the use or proposed use of the water," section 37–92–302(2), C.R.S.1973, and that, in order to qualify as a beneficial use, water must be used for "the purpose for which the appropriation is lawfully made." Section 37–92–103(4), C.R.S.1973. *See also* note 5, *supra. Cf. Four Counties Water Users Association v. Colorado River Water Conservation District*, 159 Colo. 499, 414 P.2d 469 (1966); *Metropolitan Suburban Water Users Association v. Colorado River Water Conservation District*, 148 Colo. 173, 365 P.2d 273 (1961); *Taussig v. Moffat Tunnel Co.*, 106 Colo. 384, 106 P.2d 363 (1940) (*Four Counties, Metropolitan Suburban*, and *Taussig* all involve interpretations of the statutory law as it existed prior to the enactment of the Water Right Determination and Adjudication Act of 1969). It is therefore clear that the rule of intent applied in *Vidler* was not a reversal of our prior decisions but rather an affirmation of previous case law and a recognition of the requirements of the Act.[7] Accordingly, Rocky Mountain's contention that *Vidler* is inapplicable to this case is erroneous.

### III.

■ As in *Vidler*, the evidence presented by Rocky Mountain regarding future needs and uses of the water by municipalities on the eastern slope falls short of what is necessary to indicate an intent to appropriate. There is no evidence in the record that Rocky Mountain intended to use any quantified portion of the claimed water on land it owns or leases or in facilities it owns or operates.[8] Further it is undisputed that

6. We also reject Rocky Mountain's attempt to distinguish *Denver v. Northern Colorado Water Conservancy District, supra*, on the basis of the amount of work done on a proposed water project. It is not the amount of work done or the amount of money spent which controls the granting of a conditional decree, but rather, a satisfactory showing that the two prongs of the "first step" requirement have been met. It is only upon the "first step" basis that a determination of whether a particular claim is too speculative to be awarded a conditional decree may be made. *See Colorado River Water Conservation District v. Vidler Tunnel Water Co., supra*.

7. In *Harvey Land and Cattle Co. v. Southeastern Colorado Water Conservancy District*, Colo., 631 P.2d 1111 (1981), without expressly addressing the issue, we recognized that, under different circumstances, *Vidler* could have properly been applied to litigation then pending:

"[The] proposed uses of water [in this case] are definite and, on their face, limited to providing benefits to Harvey alone. Such uses are distinguishable from mere speculative attempts to appropriate 'for the anticipated future uses of *others* not in privity of contract, or in any agency relationship, with the developer regarding that use.' *Colorado River Conservation District v. Vidler Tunnel Water Co., supra*, 197 Colo. at 417, 594 P.2d at 568 (original emphasis). Thus, contrary to the water court's determination, the *Vidler Tunnel* case does not require an outright dismissal of Harvey's application." 631 P.2d at 1114.

8. Pursuant to section 37–92–303(2), C.R.S.1973, the master declined to rule upon those portions of Rocky Mountain's applications which proposed the exchange of water from the Sweetwater Hydroelectric Project with water to be diverted under the conditional decrees sought in this case. However, at the hearing in April 1980, Rocky Mountain conceded that there was no evidence of the amount of water to be used as part of the exchange pro-

Rocky Mountain did not enter into any contractual commitments with any municipality to use any of the claimed water. Accordingly, the ultimate users of the claimed water are not clearly specified and Rocky Mountain's applications are, in effect, open-ended with respect to the beneficial uses to which the claimed water may be put in the future. Even if Rocky Mountain had entered into serious negotiations with any municipality regarding the prospective use of the claimed water, such activity would still not rise to the level of a definite commitment for use required to prove the necessary intent. *See Colorado River Water Conservation District v. Vidler Tunnel Water Co., supra.* Under the facts of this case, there was no evidence presented that Rocky Mountain represented anyone intending to put the claimed water to a beneficial use. In the absence of any contractual or agency relationships justifying Rocky Mountain's claims to represent the "ultimate users on the eastern slope," we hold that the trial court was correct in denying Rocky Mountain's applications for conditional water rights.

Accordingly, the judgment of the water court is affirmed.

---

posal. Accordingly, the water court found that Rocky Mountain did not intend to use any quantified portion of the claimed water on land it owns or leases or in facilities it owns or operates.